* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms in part, and reverses in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. The parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. An employment relationship existed between Plaintiff and Defendant-Employer on April 19, 2002, and on January 8, 2003.
5. Plaintiff sustained a compensable injury on April 19, 2002.
6. Plaintiff sustained a compensable aggravation of his April 19, 2002, workers' compensation injury on January 8, 2003.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, Plaintiff was 33 years of age.
2. On April 19, 2002, Defendant-Employer employed Plaintiff as a checkout clerk. On that date, he suffered an injury to his back while lifting boxes of push lawnmowers onto a shelf. Plaintiff reported back pain to a supervisor and was instructed to take a break. After taking a break, Plaintiff was carrying a 10-gallon can of gasoline when he again experienced pain in his *Page 3 
back. Plaintiff again reported his back pain and filed a workers' compensation claim for this injury under I.C. File No. 239411. Defendants accepted liability for Plaintiff's back injury via a Form 60 filed on May 5, 2002.
3. At the time of his April 19, 2002 back injury Plaintiff was also employed part time on an as needed basis as a security guard with Western Carolina University.
4. Plaintiff came under the care of Dr. Eric Rhoton of Mountain Neurological Center in Asheville, North Carolina. Dr. Rhoton is a physician practicing in the filed of neurosurgery. Dr. Rhoton testified that he first treated Plaintiff in April 2002, as part of an emergency room consultation. At that time Plaintiff was complaining of severe back pain. Dr. Rhoton diagnosed Plaintiff with a central disk protrusion at the L5-S1 level that impinged on the ventral thecal sac. Plaintiff underwent a microdiskectomy at L5-S1 on April 24, 2002.
5. Dr. Rhoton testified that after the first surgery Plaintiff continued to suffer from back pain. Plaintiff was treated conservatively with pain management, but this treatment failed to provide relief. Dr. Rhoton testified that an MRI performed in September 2002, showed no surgical lesions.
6. In September 2002, Plaintiff received treatment from Dr. Joseph Satterthwaite of the Carolina Center for Advanced Pain Management. Dr. Satterthwaite diagnosed Plaintiff with lumbar post laminectomy syndrome with persistent left L5 radiculopathy. He increased Plaintiff's Elavil and Neurontin prescriptions and prescribed Valium and Percocet. Plaintiff received nerve blocks, which were administered on September 20, 2002, and November 12, 2002, and he was also prescribed OxyContin and OxyFAST.
7. On January 8, 2003, Plaintiff suffered an admittedly compensable re-injury or aggravation of his back condition while working a cash register when he bent over to pick up *Page 4 
change he had dropped on the floor, resulting in a significant worsening of his back pain and right leg radicular pain. Plaintiff filed a new workers' compensation claim under I.C. File No. 266663. Defendants accepted this second claim as compensable.
8. Dr. Satterthwaite prescribed a third nerve block, which Plaintiff received on January 28, 2003. Plaintiff continued to treat with Dr. Satterthwaite thereafter.
9. Following the January 8, 2003 incident, Dr. Rhoton took Plaintiff out of work. An MRI in February 2003, showed a small focal disk protrusion at central L5-S1, which was unchanged from the previous MRI. Dr. Rhoton released Plaintiff to return to work as of February 17, 2003, with restrictions of "no lifting greater than 20 pounds, no twisting or bending, work to pain tolerance, and walk as needed for breaks." Plaintiff was provided light-duty work as a greeter and customer service desk clerk. Dr. Rhoton referred Plaintiff to Dr. Cleveland Thompson for additional pain management.
10. On May 29, 2003, Dr. Thompson opined that Plaintiff had a small recurrent disk protrusion and epidural scarring at L5-S1, with recurrent right lumbosacral radiculopathy. He performed a percutaneous diskectomy at L5-S1, which was meant to shrink the bulging disks. Plaintiff was written out of work for one day and immediately returned to work for Defendant-Employer.
11. On October 10, 2003, Plaintiff testified that he was instructed by his supervisor to work as a checkout clerk in violation of the work restrictions assigned by Dr. Rhoton. Plaintiff testified that he attempted to work in the checkout clerk position, but by lunch time he was suffering from significant pain in his back and that he informed his supervisor of his pain, but was not removed from the checkout clerk position. Plaintiff further testified that he located the assistant manager and resigned from his job to protect the condition of his back in accordance *Page 5 
with his doctor's work restrictions. Plaintiff thereafter continued his part time employment with Western Carolina University.
12. Defendants presented the testimony Joyce Cabe, Dorothy Bermudez and Sharron Brantley, three customer service managers who worked on October 10, 2003. All three managers testified that they did not recall specifically interacting with Plaintiff on that day, and that they would never ask an employee to work in violation of his work restrictions. In addition, Jerry Pressly, Plaintiff's manager, testified that Plaintiff stated that he might as well quit his job since he was no longer receiving workers' compensation benefits.
13. Defendants also presented testimony establishing that in order to operate a cash register, an employee must enter his personal employee identification code into the register. At the end of each day, a computer generates a report of each employee who operated a cash register during that day and which cash registers that employee operated. Defendants introduced into evidence the cash register logs for October 10, 2003, which reflected that Plaintiff did not log on to operate a register that day.
14. The Full Commission finds more credible the testimony and evidence presented by Defendants that Plaintiff did not operate a cash register on October 10, 2003.
15. The Full Commission finds that Plaintiff voluntarily resigned from his position with Defendant-Employer on October 10, 2003, without reasonable justification. At the time of Plaintiff's voluntary resignation, suitable employment was available and he is not entitled to workers' compensation benefits during the period of his unjustified refusal to accept suitable employment.
16. On November 4, 2003, Dr. Satterthwaite opined that Plaintiff had reached maximum medical improvement and assigned him an 18% permanent partial impairment rating *Page 6 
to the spine. Dr. Satterthwaite released Plaintiff to return to work with the following restrictions: "Limited if any squatting, stooping, bending or crawling, limited if any, unprotected heights, no lifting of greater than 30 pounds occasionally or 20 pounds frequently, no carrying of greater than 20 pounds, and no standing or walking for greater than one or two hours without adequate rest and the ability to change position." Defendant-Employer had suitable employment it could have offered Plaintiff within these restrictions.
17. Plaintiff continued to treat with Dr. Rhoton as his back pain continued to worsen. A diskogram confirmed that Plaintiff's degenerative disk at L5-S1, was causing the pain. As a result, Dr. Rhoton performed a diskectomy and fusion surgery at the L5-S1 level on Plaintiff December 20, 2004.
18. With regard to Plaintiff's diskectomy and fusion surgery on December 20, 2004, Dr. Rhoton testified, and the Full Commission finds as fact, that the need for this surgery was causally related to Plaintiff's admittedly compensable disk injury at L5-S1, that occurred on April 19, 2002. Dr. Rhoton testified that a herniated disk is basically a degenerative process and once it is set in motion, the disks will often slowly degenerate and just living could cause pain, or certain activities could trigger a flare up.
19. Following Plaintiff's surgery, Dr. Rhoton released him to return to light duty or sedentary work on May 26, 2005, with a restriction of no lifting over 10 pounds. At that doctor's visit Plaintiff indicated that he wanted to try working light duty. As of the date of his deposition testimony on November 16, 2003, Dr. Rhoton testified that Plaintiff may have reached maximum medical improvement, but he wanted Plaintiff to see one of the physiatrists in his practice before a determination of whether he has reached maximum medical improvement is made or rating is given. *Page 7 
20. At the time of the hearing before the Deputy Commissioner on July 20, 2005, Plaintiff had not been provided with vocational rehabilitation assistance to aid him in locating suitable employment within his current restrictions. Additionally, Plaintiff testified that he was still undergoing physical therapy and that he had been hospitalized in April 2005 and June 2005, for "GI problems," which might be related to his compensable injury. No medical records of treatment relating to "GI problems" are in the record.
21. As a result of the progressive worsening of his April 19, 2002 admittedly compensable back injury, Plaintiff was unable to work in any capacity from the date of his surgery on December 20, 2004, through the date of his release to return to light duty or sedentary work on May 26, 2005.
22. Since the hearing before the Deputy Commissioner occurred soon after Plaintiff's release to return to very restricted work and while Plaintiff was still in physical therapy, there is insufficient evidence in the record to establish whether Plaintiff made reasonable efforts to find suitable employment after May 26, 2005, or whether seeking suitable employment would be futile. Therefore, the issue of the existence or extent of Plaintiff's disability after May 26, 2005, should be reserved for subsequent determination.
23. The medical treatment Plaintiff has received for his back was reasonably required to effect a cure, provide relief, or lessen the period of disability, including the diskectomy and fusion surgery in December 2004.
24. In April 2004, Plaintiff filed a Form 18M in each claim, requesting further medical treatment based on continued pain. Dr. Rhoton certified that Plaintiff was at a substantial risk of future medical treatment for his back condition. On June 25, 2004, Defendants responded *Page 8 
to both Form 18Ms asserting that since Plaintiff voluntarily resigned from his position in October 10, 2003, and since Plaintiff reached maximum medical improvement on November 4, 2003, he could not have aggravated his condition in the course and scope of his employment with Defendant-Employer. On July 8, 2004, the Executive Secretary's Office approved Plaintiff's Form 18M.
25. Although Defendants appealed the Executive Secretary's approval of the Form 18M signed by Dr. Rhoton in April 2004, they did not cross-examine Dr. Rhoton about his certification that Plaintiff has a substantial risk of future medical treatment for his back condition. Before the Full Commission, Defendants argued in their brief, "The Industrial Commission has ruled that Plaintiff is entitled to the fusion surgery for this reherniation and Defendants have not appealed that ruling. However, Defendants contend that Plaintiff has failed to meet his burden of showing that there is a substantial need for additional medical treatment." Defendants further argued, that the granting of a Form 18M in relation to future medical treatment after the December 2004, fusion is premature as the time limitation established by N.C. Gen. Stat. § 97-25.1, is not in imminent danger of expiring since Defendants have not appealed the Order requiring payment for the fusion surgery, and are accordingly about to make a large medical payment, restarting the two-year time limitation on the duration of medical treatment.
26. Based upon the greater weight of the evidence of record, the Full Commission finds that there is a substantial risk that future medical treatment for Plaintiff's compensable back condition will be necessary and that Plaintiff's Form 18M was properly approved.
27. Plaintiff's average weekly wage was $ 270.00, which yields a compensation rate of $ 180.09.
 * * * * * * * * * * * *Page 9 
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. On April 19, 2002, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the scope and course of his employment with Defendant-Employer when he suffered an injury to his back while lifting boxes of push lawnmowers onto a shelf and moved a 10-gallon can of gasoline while performing job duties assigned by Defendant Employer. N.C. Gen. Stat. § 97-2 (6).
2. On January 8, 2003, Plaintiff suffered an admittedly compensable re-injury or aggravation of his back condition while working a cash register when he bent over to pick up change he had dropped on the floor, resulting in a significant worsening of his back pain and right leg radicular pain. N.C. Gen. Stat. § 97-2 (6).
3. A Plaintiff in a workers' compensation case has the burden of initially proving "each and every element of compensability," including a causal relationship between the injury and the employment.Whitfield v. Lab. Corp. of Amer., 158 N.C. App. 341, 350,581 S.E.2d 778, 784 (2003). "The quantum and quality of the evidence required to establish prima facie the causal relationship will of course vary with the complexity of the injury itself." Hodgin v. Hodgin,159 N.C. App. 635, 639, 583 S.E.2d 362,365 (2003). A Plaintiff must prove causation by the "greater weight" of the evidence. Phillips v. U.S. Air,Inc., 120 N.C. App. 538, 541, 463 S.E.2d 259, 261 (1995). The Supreme Court of North Carolina has also held that in cases involving complicated medical questions, only an expert can give competent opinion testimony as to the issue of causation. Click v. Pilot FreightCarriers, 300 N.C. 164, 167, 265 S.E.2d 389, *Page 10 
391 (1980). Where medical opinion testimony is required, "medical certainty is not required, [but] an expert's `speculation' is insufficient to establish causation." Holley v. ACTS, Inc.,357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). Furthermore, the causal relationship must be established by evidence "such as to take the case out of the realm of conjecture and remote possibility." Holley,357 N.C. at 232, 581 S.E.2d at 753. In the instant case, the greater weight of the evidence of record, including the medical opinion of Dr. Rhoton, establishes a causal relationship between Plaintiff's admittedly compensable injury of April 19, 2002, and his diskectomy and fusion surgery on December 20, 2004, and resulting disability.
4. To establish disability, "[t]he burden is on the employee to show that he is unable to earn the same wages he earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury." Russell v. LowesProduct Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457
(1993). In the instant case, Plaintiff has failed to establish that any disability he may have suffered from October 10, 2003 through December 19, 2004, was related to his admittedly compensable workplace injury, although there was a dispute over whether Plaintiff voluntarily quit his light duty job with Defendant-Employer or was forced *Page 11 
to quit because his assigned work duties exceeded his work restrictions. The greater weight of the evidence establishes that Plaintiff was not required to do work outside his restrictions, even though he may have at times been asked to perform work that exceeded his restrictions. Plaintiff, however, has presented sufficient evidence that he was medically excused from working in any capacity from December 20, 2004, when he had additional surgery through at least May 26, 2005, when he was released to return to light duty or sedentary work with restrictions. Due to the timing of the hearing before the Deputy Commissioner, there is insufficient evidence in the record from which to determine whether Plaintiff made reasonable efforts to find suitable employment after May 26, 2005, or whether seeking suitable employment with his severe restrictions would be futile. This issue is hereby reserved for subsequent determination.
5. As a result of Plaintiff's admittedly compensable injuries by accident on April 19, 2002, and January 8, 2003, Plaintiff was temporarily totally disabled for various periods prior to October 10, 2003, for which he has already been paid workers' compensation benefits. The period of disability at issue herein is the period after October 10, 2003, when Plaintiff voluntarily quit working for Defendant-Employer. Plaintiff is not entitled to temporary total disability compensation from October 10, 2003 through December 19, 2004. As a result if his compensable injury, Plaintiff is entitled to resumption of temporary total disability compensation beginning December 20, 2004, and continuing at least through May 26, 2005. N.C. Gen. Stat. § 97-29.
6. Plaintiff's average weekly wage is $ 270.00, with a corresponding compensation rate of $ 180.09. N.C. Gen. Stat. § 97-2(5). *Page 12 
7. Plaintiff is entitled to payment of medical expenses for all treatment which is reasonably required to effect a cure, provide relief, or lessen the period of disability from his compensable injury, including payment for the diskectomy and fusion surgery on December 20, 2004, and including treatment during the period from October 10, 2003 through December 20, 2004, when he was not eligible for indemnity compensation. N.C. Gen. Stat. §§ 97-2(19); 97-25.
8. Plaintiff's Form 18M signed by Dr. Rhoton in April 2004, was properly approved. N.C. Gen. Stat. § 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorneys' fee approved below, Defendants shall resume payment of temporary total disability compensation to Plaintiff for the period from December 20, 2004, through at least May 26, 2005, at the rate of $ 180.09 per week. This compensation has accrued and shall be paid in a lump sum.
2. Defendants shall pay for medical expenses incurred or to be incurred in the future as a result of Plaintiff's compensable injury for so long as such treatment may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including payment for the diskectomy and fusion surgery in December 2004.
3. The Form 18M signed by Dr. Rhoton is approved.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due Plaintiff and paid directly to Plaintiff's counsel in one lump sum. *Page 13 
5. Defendants shall pay the costs.
 ORDER
A determination of the existence and extent of Plaintiff's disability after May 26, 2005, is reserved for subsequent determination. Either party may request an expedited hearing before a Deputy Commissioner on this issue.
This the __ day of May 2007.
 S/__________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING: S/__________________ BUCK LATTIMORE CHAIRMAN
 S/__________________ PAMELA T. YOUNG COMMISSIONER *Page 1