***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and of the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injury and/or occupational disease and an employer-employee relationship existed between them. The above-designated carrier was on the risk at the time of the injury, alleged or otherwise.
4. Plaintiff alleges that he suffered an injury by accident or specific traumatic incident on September 24, 2004.
5. After oral argument before the Full Commission, the parties stipulated in writing that Plaintiff returned to work with Defendant-Employer on February 6, 2006, and this stipulation is added to the record as exhibit pages 192, 193 and 194.
6. Plaintiff's average weekly wage was $897.43, yielding a compensation rate of $598.32.
7. Stipulated issues for determination are as follows:
 (a) Whether Plaintiff sustained a compensable injury by accident or specific traumatic incident on September 24, 2004?
 (b) If so, to what benefits is the Plaintiff entitled?
 (c) The amount of the credit due to the Defendants for payment of short-and/or long-term disability benefits in the event that this claim is found to be compensable?
8. The parties stipulated into evidence as Stipulated Exhibit # 1, Pre-trial agreement, as modified and initialed by the parties.
9. The parties stipulated into evidence as Stipulated Exhibit # 2, medical records. *Page 3 
10. The parties stipulated into evidence as Stipulated Exhibit # 3, Industrial Commission forms, notices and Orders.
 ***********
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was a 29-year old man employed by Defendant-Employer as its produce manager. His job duties as produce manager included overall department maintenance, stocking, loading and unloading of produce, handling department schedules for employees in his department and other duties.
2. On September 24, 2004, Plaintiff was performing his usual job duties and was lifting a crate of apples when he felt a sharp pain in his lower back with an "electric-like" feeling in his left leg. He reported the injury to his store manager, Derrick Hooks, on the same day.
3. Over the three months following September 24, 2004, Plaintiff continued working, even though his symptoms worsened. He presented for evaluation with Dr. Jennifer Seddon, his family doctor in Dunn, North Carolina. According to Plaintiff, each time he was examined by Dr. Seddon, he was given work restriction notes that he delivered to Mr. Hooks. Plaintiff's medical records further reflect that he told Dr. Seddon "he has to work this month to get bonus on November 30, 2004."
4. By February 2005, Plaintiff's symptoms significantly worsened, and Dr. Seddon referred him to Dr. Robert Allen, a neurosurgeon in Raleigh, North Carolina. While under Dr. Allen's care, Plaintiff underwent a course of three epidural steroid injections that only gave temporary relief to his pain and attendant symptoms. *Page 4 
5. On December 9, 2004, Defendants sent Plaintiff to Dr. Wanda Godfrey, at Wake Urgent Care in Garner, North Carolina. Dr. Godfrey noted that Plaintiff's current symptoms began about two months earlier. Dr. Godfrey testified that she stated in her December 22, 2004 medical note that Plaintiff, "worked in a grocery store, and he'd been doing a lot of heavy lifting." Dr. Godfrey further stated that Plaintiff had told her that his back pain had increased significantly within the past two months. On February 25, 2005, Dr. Godfrey wrote Plaintiff out of work until he could be seen by a neurosurgeon.
6. After Dr. Godfrey took Plaintiff out of work, Defendant-Employer advised him that he could file for short-term and long-term disability through the employee's disability plan, which was fully funded by Defendants. Plaintiff applied for short-term and long-term disability benefits, but his application was initially denied by a letter from The Hartford Group Benefits Accounts dated March 21, 2005, because "[i]nformation in your file indicates you were injured while at work on 9/15/04."
7. Plaintiff's application for short-term and long-term disability benefits was later approved. Plaintiff received disability benefits for period of time following February 25, 2005.
8. On April 20, 2005, Plaintiff filed a Form 18 employee report of injury and a Form 33 request for hearing.
9. Plaintiff had several reasons for initially deciding against pursuing a workers' compensation claim for his September 24, 2004 workplace injury. First, Plaintiff did not realize that he had suffered a serious injury, and believed that he had likely just pulled a muscle or strained his back. Second, because of how Defendant-Employer's employee bonus program was funded, all employee bonuses were negatively impacted by claims paid. Third, because the last *Page 5 
quarter is typically the highest revenue period for most grocery stores like Defendant-Employer, Plaintiff wanted to "get through the holidays without missing time."
10. On March 15, 2005, Defendants filed a Form 19 employer's report of injury, and a Form 61 denying this claim on the grounds that "[t]he employee did not sustain an injury by accident arising out of and in the course and scope of his employment." Additionally, Defendants filed a Form 33R response to request for hearing on December 7, 2005, and further contended that Plaintiff failed to provide written notice of the alleged injury within 30 days after the occurrence of the alleged injury as required by N.C. Gen. Stat. § 97-22. Defendants have raised no other defenses concerning Plaintiff's claim.
11. Plaintiff's testimony regarding the occurrence of his injury and the reporting thereof was corroborated by the testimony of Plaintiff's co-worker, Brian Duch. Mr. Duch testified that "he and everyone else in the produce department knew" that Plaintiff had injured his back at work. Moreover, Mr. Duch testified that he specifically approached Derrick Hooks, the store manager, and requested a raise due to the fact that he and others in the produce department were carrying a significantly larger workload because of Plaintiff's disability and restricted work status. During this conversation, Mr. Duch and Mr. Hooks specifically discussed Plaintiff's injury.
12. Mr. Duch also testified that another co-worker at the same store named Steve Alford injured his back in the presence of Mr. Duch, and within two weeks, Mr. Alford was terminated.
13. Finally, Mr. Duch testified that Mr. Hooks "cornered" him in his office, and informed him that he should "mind his own business" and not get involved in Plaintiff's workers' compensation claim. *Page 6 
14. Vincent Murphy, the district manager, testified as to the usual, three-step procedure for filing a workers' compensation claim. According to Mr. Murphy, if an employee is injured at work, three things occur. First, the employee is sent to the designated physician of the Defendants. Second, the employee is sent for a drug test. Third, the paperwork, presumably including the Form 19, is prepared and sent to the insurance carrier. In this case, Defendant-Employer followed the above described three-step procedure for filing Plaintiff's workers' compensation claim. Mr. Murphy also confirmed that he had no knowledge that Plaintiff may have been injured in some manner other than he claimed.
15. Defendants presented three arguments at the hearing before the Deputy Commissioner. First, Defendants alleged that Plaintiff fabricated his claim to avoid disciplinary action. However, Defendants failed to produce sufficient evidence that disciplinary action was ever initiated as against Plaintiff. Moreover, Defendants produced Plaintiff's performance evaluation dated May 5, 2004, which noted Plaintiff's performance in every single category as meeting or exceeding expectations. The Full Commission gives little weight to Defendants contention that Plaintiff fabricated the claim so as to avoid disciplinary action.
16. Second, Defendants argue that Plaintiff failed to give written notice to the Defendants of the injury within the time allowed. The Full Commission finds credible Plaintiff's testimony that he reported his injury to the store manager, Mr. Hooks, on the date of the occurrence, as well as his testimony that he opted to continue working through the busy holiday season in order to help the store, and to avoid jeopardizing or reducing his bonus or that of his co-workers and his testimony that he did not initially realize he had suffered a serious injury. This finding is based in part on the fact that Plaintiff's testimony was corroborated by that of Mr. *Page 7 
Duch, which the Full Commission finds credible, and partially corroborated by the testimony of Mr. Murphy, which the Full Commission finds credible.
17. Based upon the greater weight of evidence, the Full Commission finds that Defendants had actual knowledge of Plaintiff's work injury, and a reasonable excuse exists for Plaintiff's failure to file a written notice within 30 days of the occurrence of his work injury. Furthermore, the Full Commission finds that Defendants have not been prejudiced as result of Plaintiff's failure to give this written notice within 30 days of his injury.
18. Third, Defendants contend that the Commission should find Plaintiff's back condition is not causally related to his September 24, 2004 workplace injury. Specifically, Defendants contend that Plaintiff's back condition relates to a pre-existing problem.
19. With regard to Defendants' contention, Plaintiff did seek medical attention for a previous back injury with Dr. Seddon in 2003, and early 2004. As a consequence of the evaluations and studies conducted, Dr. Seddon diagnosed Plaintiff as suffering from a "left ulnar mononeuropathy and right ulnar mononeuropathy." Dr. Seddon never referred Plaintiff for further medical evaluation or treatment following a nerve conduction study that she ordered. Plaintiff's symptoms resolved on their own each time. Similarly, Dr. Leonard Nelson testified that the first time that anyone at his facility, Raleigh Orthopaedic Clinic, in Raleigh, North Carolina, saw Plaintiff was on or about February 15, 1999, and that the Plaintiff was seen for "mechanical low back pain." Between that one time examination in 1999, and the first date that the Plaintiff presented at Raleigh Orthopaedic Clinic for evaluation after the injury date for this claim, Plaintiff neither sought nor obtained medical care or treatment for his back from Raleigh Orthopaedic Clinic. *Page 8 
20. Dr. Nelson testified that Plaintiff first presented for evaluation with him on April 4, 2005, after being referred by Dr. Rich for consideration of a minimally invasive fusion at L5-S1. Plaintiff's clinical presentation was that of back pain radiating "down in the left buttocks and down the back of the left leg." Comparing the intake forms from this injury and the previous one, there's "more leg pain than back pain" for the second injury, and in fact, there was no report of leg pain at all in the earlier of the two forms. Dr. Seddon also characterized the two earlier times that Plaintiff sought treatment for lower back problems as "different."
21. Dr. Rich testified that while prior injuries to Plaintiff's back could affect his causation opinion, an injury or medical problems some five years remote is simply not significant. Dr. Nelson also testified that back in 1999, he prescribed physical therapy, some medication and instructions on how to take care of his back, and did not see Plaintiff again until April 4, 2005.
22. Dr. Seddon referred Plaintiff for an MRI of his lower back. The MRI was performed at Betsy Johnson Regional Hospital on November 18, 2004. The MRI revealed that Plaintiff suffered from a paracentral disc protrusion at L5-S1 and a bulge at L4-5. Dr. Seddon then referred him for a course of physical therapy, prescribed a TENs unit, and referred him to Dr. Allen for consideration of epidural steroid injections. Dr. Seddon did not see or evaluate Plaintiff later than December 2004, as his care had been transferred to other physicians.
23. Dr. Allen performed the epidural injections without significant benefit, at which time Plaintiff was referred to Dr. Kenneth J. Rich, a neurosurgeon in Raleigh, North Carolina.
24. Plaintiff first presented to Dr. Rich on March 31, 2005, upon the referral of Dr. Wanda Godfrey. Plaintiff presented with complaints of lower back pain with radicular symptoms on the left, brought MRI films with him, and completed a patient intake sheet. *Page 9 
Plaintiff reported having injured himself approximately six months earlier while lifting at work. The MRI showed that Plaintiff suffered from a "dried and slightly collapsed, or slightly shorter than it should be, disk at L5-S1."
25. Dr. Rich also evaluated the report from the recent CT/discogram conducted prior to the first exam, and testified that Plaintiff's disc at L5-S1 was "really pathologic" and that the CT/discogram was "concordant" with the MRI films. He had also attempted the typical conservative treatment measures including physical therapy, activity modifications, anti-inflammatory medications, a TENs unit and injections. Consequently, Dr. Rich recommended that he undergo a "minimally invasive" instrumented fusion at L5-S1 with Dr. Nelson assisting with the procedure.
26. Dr. Rich opined that Plaintiff's severely desiccated and bulging disc was caused by Plaintiff's September 24, 2004 workplace injury.
27. Dr. Nelson confirmed Dr. Rich's testimony, and further opined that Plaintiff's condition that he treated was consistent with how Plaintiff described his workplace injury of September 24, 2004.
28. Dr. Godfrey also testified that Plaintiff's clinical presentation was consistent with "injuring or aggravating a preexisting back injury at work on or about September 24, 2004."
29. Plaintiff underwent the fusion at L5-S1 on May 16, 2005, without complications. After a period of post-operative care, on November 16, 2005, Dr. Nelson released Plaintiff at full-duty to return to work on a graduated basis beginning on December 5, 2005.
30. Dr. Nelson's deposition testimony was taken in this matter on February 6, 2006. In Dr. Nelson's opinion and according to the North Carolina Rating Guide, Plaintiff would be entitled to a thirty percent (30%) permanent partial disability rating of his lumbar spine. *Page 10 
31. Based on the greater weight of the evidence, Plaintiff suffered a compensable injury to his back on September 24, 2004, as a direct result of a specific traumatic incident of the work assigned to him by Defendant-Employer.
32. Plaintiff has presented sufficient evidence to establish a causal relationship between his September 24, 2004 workplace injury and the condition for which he is being treated.
33. With respect to disability, at the time of the hearing before the Deputy Commissioner, Plaintiff was written out of work from February 25, 2005 until December 5, 2005. Upon release to return to work, Plaintiff was still employed with Defendant-Employer; however, suitable employment with Defendant-Employer was not immediately available. Plaintiff returned to work with Defendant-Employer on February 6, 2006.
34. The medical treatment Plaintiff has received was reasonably required and tended to effect a cure, provide relief and/or lessen his disability.
35. Plaintiff's average weekly wage was $897.43, yielding a compensation rate of $598.32.
36. Plaintiff received short-term disability and long-term disability benefits from a disability plan that was fully funded by Defendants, and Defendants should receive a credit for these benefits paid Plaintiff.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following: *Page 11 
 CONCLUSIONS OF LAW
1. Plaintiff sustained a specific traumatic incident to his back arising out of his employment with Defendants as a direct result of the work assigned on September 24, 2004. N.C. Gen. Stat. § 97-2(6).
2. A Plaintiff in a workers' compensation case has the burden of initially proving "each and every element of compensability," including a causal relationship between the injury and her employment.Whitfield v. Lab. Corp. of Amer., 158 N.C. App. 341, 350,581 S.E.2d 778,784 (2003). "The quantum and quality of the evidence required to establish prima facie the causal relationship will of course vary with the complexity of the injury itself." Hodgin v. Hodgin,159 N.C. App. 635,639, 583 S.E.2d 362, 365 (2003). A Plaintiff must prove causation by a "greater weight" of the evidence. Phillips v. U.S. Air, Inc.,120 N.C. App. 538, 541, 463 S.E.2d 259, 261 (1995). The North Carolina Supreme Court has also held that in cases involving complicated medical questions, only an expert can give competent opinion testimony as to the issue of causation. Click v. Pilot Freight Carriers, 300 N.C. 164, 167,265 S.E.2d 389, 391 (1980). Where medical opinion testimony is required, "medical certainty is not required, [but] an expert's `speculation' is insufficient to establish causation." Holley v. ACTS, Inc.,357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). Furthermore, the causal relationship must be established by evidence "such as to take the case out of the realm of conjecture and remote possibility." Holley,357 N.C. at 232,581 S.E.2d at 753. In the instant case, Dr. Rich opined that Plaintiff's severely desiccated and bulging disc was caused by Plaintiff's September 24, 2004 workplace injury. Dr. Nelson confirmed Dr. Rich's testimony, and further opined that Plaintiff's condition that he treated was consistent with how Plaintiff described his workplace injury of September 24, 2004. Dr. Godfrey also testified that Plaintiff's clinical presentation was consistent with "injuring or *Page 12 
aggravating a preexisting back injury at work on or about September 24, 2004." Plaintiff has presented sufficient evidence to establish a causal relationship between his September 24, 2004 workplace injury and the condition for which he was being treated. Defendants have not presented sufficient evidence that his injury and resultant disability occurred in any manner other than that alleged by Plaintiff. In fact, his short-term and long-term disability application was initially denied as a workplace injury.
3. Plaintiff did not provide written notice of his injury within the time period set forth in N.C. Gen. Stat. § 97-22, which provides, "[N]o compensation shall be payable unless such written notice is given within 30 days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby." N.C. Gen. Stat. § 97-22. As found as fact above, Plaintiff had a reasonable excuse for failing to provide written notice of injury within 30 days, as Defendants had actual knowledge of his injury. In addition, Plaintiff's late filing of written notice of his injury did not prejudice Defendants. Therefore, Plaintiff's claim is not barred for failure to give written notice of injury within 30 days pursuant to N.C. Gen. Stat. § 97-22.
4. In order to receive disability compensation, the employee has the burden of proving the existence of that disability and its extent.Perkins v. U.S. Airways, 177 N.C. App. 205, 628 S.E.2d 402 (2006). The burden may be met in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it *Page 13 
would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment[;] or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). In the instant case, Plaintiff's testimony, his medical records, his co-workers' testimony and that of his physicians all indicate that his disability is a result of his workplace injury. Plaintiff's physicians completely disabled him from working from February 25, 2005 to December 5, 2005. Upon release to return to work, Plaintiff was still employed with Defendant-Employer; however, suitable employment with Defendant-Employer was not immediately available. Plaintiff returned to work with Defendant-Employer on February 6, 2006. Defendants have presented no evidence disputing the extent of Plaintiff's disability.
5. Plaintiff's average weekly wage was $897.43, yielding a compensation rate of $598.32. N.C. Gen. Stat. § 97-2(5).
6. As a result of his September 24, 2004 injury by accident, Plaintiff is entitled to have Defendants pay temporary total disability compensation at the rate of $598.32 per week for the period from February 25, 2005 through February 6, 2006. N.C. Gen. Stat. § 97-29.
7. As a result of his injury, Plaintiff sustained a thirty percent (30%) permanent partial impairment to his back and is entitled to compensation for 90 weeks.
8. As a result of his September 24, 2004 injury by accident, Plaintiff is entitled to have Defendants pay for medical expenses incurred or to be incurred in the future for so long as such treatment may reasonably be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-25. *Page 14 
9. Plaintiff received short-term disability and long-term disability benefits from a disability plan that was fully funded by Defendants, and Defendants are entitled to a credit for these benefits paid Plaintiff. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees hereinafter approved, Defendants shall pay to Plaintiff temporary total disability benefits at the stipulated compensation rate of $598.32 per week from February 25, 2005 through February 6, 2006, and partial permanent disability compensation for 90 weeks for the thirty percent (30%) rating to his back. Amounts which have accrued shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due Plaintiff pursuant to this award is approved for Plaintiff's counsel and shall be paid by Defendants as follows: twenty-five percent (25%) percent of the accrued compensation due Plaintiff under this award, prior to the deduction for Defendants' credit, shall be paid directly to Plaintiff's counsel; thereafter, Plaintiff's counsel shall receive every fourth check.
3. After deduction of attorney's fee, Defendants shall receive a credit for short and long-term disability benefits paid to Plaintiff.
4. Defendants shall pay all reasonable medical expenses incurred or to be incurred in the future by Plaintiff as a result of his injury on September 24, 2004, for so long as such examinations, evaluations, and treatments tend to effect a cure, give relief, or lessen Plaintiff's *Page 15 
period of disability, when bills for the same have been approved in accordance with the provisions of the Act.
5. Defendants shall pay costs.
This the ___ day of August 2007.
S/________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/________________________ PAMELA T. YOUNG COMMISSIONER
 S/________________________ DANNY LEE McDONALD COMMISSIONER *Page 1