THOMAS E. HODGIN, III, EMPLOYEE, PLAINTIFF v. THOMAS E. HODGIN, III, D/B/A, HODGIN CARPET, EMPLOYER, AND N.C. FARM BUREAU MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. COA02-1007

(Filed 5 August 2003)

**Workers' Compensation— hernia—medical testimony as to cause—speculative**

Speculative medical testimony was insufficient to support the Industrial Commission's findings and conclusion in a workers' compensation case that plaintiff's hernia was caused by work related activity. Plaintiff, a carpet layer, suffered a rare paraesophageal hernia which he contended was caused by lifting an unusually heavy chest of drawers, but the entirety of the medical testimony was that the cause of plaintiff's hernia remains unclear.

Appeal by defendants from opinion and award entered 28 May 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 May 2003.

*Kathleen G. Sumner, for plaintiff-appellee.*

*Young Moore and Henderson P.A., by Dawn Dillon Raynor, for defendants-appellants.*

LEVINSON, Judge.

This case arises from an award and opinion of the North Carolina Industrial Commission, finding plaintiff suffered a compensable hernia injury when he lifted a chest of drawers 9 February 1999. We reverse.

On 2 February 1999, plaintiff saw Dr. David Patterson for complaints of epigastric abdominal pain. He described to Dr. Patterson that "[o]ver the last month he has had a feeling of 'gas being trapped' in his subxiphoid area, especially after eating rapidly." Dr. Patterson noted that plaintiff's symptoms were possibly caused by a hiatal hernia, gastroesophogeal reflux disease, and/or colon malignancy but concluded that further tests should be conducted to properly diagnose plaintiff. Those tests were scheduled for 22 February 1999.

On the morning of 9 February 1999, plaintiff saw Dr. Philip Carter for complaints of "back and thigh pain." Dr. Carter noted that plaintiff had a "recent history of either ulcer or hiatal hernia." Later that day, plaintiff felt a "bad pain" in his chest area under his ribs when he attempted to lift a particularly heavy chest of drawers. Although plaintiff initially sought medical attention that same day, he abandoned treatment after his pain subsided.

On 22 February 1999, plaintiff underwent an esophagogastroduodenoscopy as part of the tests scheduled by Dr. Patterson on 9 February 1999. That test revealed a "large para-esophageal hernia." On 17 March 1999, complaining of chest pain, plaintiff saw Dr. Anita Lindsey who also diagnosed plaintiff with a paraesophageal hernia. Dr. Lindsey performed surgery to repair the hernia on 26 March 1999, and plaintiff subsequently returned to work on 19 May 1999.

On 31 August 2000, the Industrial Commission filed an opinion and award finding plaintiff suffered a paraesophageal hernia on 9 February 1999 as a direct result of lifting an "unusually heavy chest of drawers," "which constituted an interruption in [his] normal work routine." The Industrial Commission awarded plaintiff temporary total disability compensation and medical expenses incurred as a result of his injury. Both parties appealed to the Full Commission (Commission). On 28 May 2002, the Commission modified the opinion and award. Defendant now appeals, contending (1) the "Commission erred by finding and concluding that plaintiff sustained a hernia as a direct result of" his work related activity on 9 February

1999, and (2) the Commission erred in calculating plaintiff's average weekly wage.

Initially we review the Commission's conclusions to determine whether they are supported by its findings.

The Commission found, in pertinent part:

3. On February 9, 1999, . . . [a]s the plaintiff-employee and his assistant lifted the unusually heavy chest of drawers, the plaintiff-employee felt a sudden onset of severe pain in his chest that did not exist before. The plaintiff-employee experienced difficult breathing and took many breaks during the remainder of his shift. The plaintiff-employee completed his shift.

4. Upon completion of his shift, the plaintiff-employee drove himself to the emergency room. After waiting approximately 45 minutes, the plaintiff-employee's chest pain subsided and the plaintiff-employee left without seeing a physician.

5. On February 2, 1999, the plaintiff-employee presented to Dr. David R. Patterson, an internist and specialist in gastroenterology, for evaluation of epigastric abdominal pain. Dr. Patterson reviewed the plaintiff-employee's December 4, 1997 x-rays and examined the plaintiff-employee.

6. The plaintiff-employee presented to Dr. Michael E. Norins, an internist, for an annual physical on February 7, 1999. The plaintiff had no complaints and felt well. The plaintiff-employee also presented to Dr. Philip J. Carter, an orthopedic, on February 9, 1999 complaining of low back pain, but no chest pains.

7. Dr. Patterson eventually diagnosed the plaintiff-employee with a p[ara]esophageal hernia. Dr. Patterson opined that symptoms of a p[ara]esophageal hernia include chest pains and he stated that a p[ara]esophageal hernia might be asymptomatic for extended periods of time. Dr. Patterson further stated that on February 9, 1999, when the plaintiff-employee was at work and experienced acute chest pain which eventually subsided, this episode could have been related to the plaintiff-employee's p[ara]esophageal hernia.

. . . .

9. The plaintiff-employee presented to the emergency room on March 17, 1999 complaining of chest pain. Dr. Anita K. Lindsey, surgeon, diagnosed the plaintiff-employee with a left

**HODGIN v. HODGIN**

[159 N.C. App. 635 (2003)]

p[ara]esophageal hernia. Dr. Lindsey recommended surgery to repair the plaintiff-employee's p[ara]esophageal hernia that she performed on March 26, 1999.

10. Dr. Lindsey opined that a p[ara]esophageal hernia can be asymptomatic for some time and that there is no way to know exactly when the plaintiff-employee's p[ara]esophageal hernia appeared, although severe chest pain, heartburn and gas pressure felt in the chest are symptoms. Dr. Lindsey also stated that p[ara]esophageal hernias are rare.

11. Dr. Lindsey further opined that there are three causes of p[ara]esophageal hernia: 1) congenital; 2) acquired; and 3) sudden trauma. Dr. Lindsey stated that the plaintiff-employee, a carpet layer, who constantly lifts carpet and moves some furniture is at an increased risk of developing a hernia of any type, but that it is rare for a person with several different types of hernias to be more likely to have a congenital predisposition to hernias.

12. Dr. Lindsey opined that without x-rays of the plaintiff-employee between December 1997 and March 1999, there is no way to establish as a medical fact when the plaintiff-employee's p[ara]esophageal hernia occurred or presented. Dr. Lindsey further stated that no one could palpate the plaintiff-employee's p[ara]esophageal hernia because it was behind the plaintiff-employee's rib cage and that only the esophagogastroduodenoscopy could reveal whether the plaintiff-employee had a p[ara]esophageal hernia prior to February 9, 1999. The plaintiff-employee's esophagogastroduodenoscopy was performed after February 9, 1999.

The Commission concluded, in pertinent part:

1. The plaintiff[-employee] lifted the unusually heavy chest of drawers of February 9, 1999 that constituted an interruption in the plaintiff's normal work routine, as it was not a part of his usual routine for the chest of drawers to be so heavy. N.C. Gen. Stat. § 97-2(6).

2. The plaintiff[-employee] sustained a hernia that appeared suddenly and did not exist before arising out of the course of his employment with the defendant-employer and as a direct result of a specific traumatic incident of the work assigned on February 9, 1999[,] when he lifted the unusually heavy chest of drawers. N.C. Gen. Stat. § 97-2(18).

**HODGIN v. HODGIN**

[159 N.C. App. 635 (2003)]

Our review of the Commission's opinion and award "is limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000). "The facts found by the Commission are conclusive upon appeal to this Court when they are supported by [any] competent evidence, even when there is evidence to support contrary findings." *Pittman v. International Paper Co.*, 132 N.C. App. 151, 156, 510 S.E.2d 705, 709, *disc. review denied*, 350 N.C. 310, 534 S.E.2d 596, *aff'd*, 351 N.C. 42, 519 S.E.2d 524 (1999); *see also Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998).

In order to recover for a hernia an employee has the burden of showing:

    a. That there was an injury resulting in hernia or rupture[;]

    b. That the hernia or rupture appeared suddenly[;]

    . . . .

    d. That the hernia or rupture immediately followed an accident [or arose] out of . . . a specific traumatic incident[; and]

    e. That the hernia or rupture did not exist prior to the accident for which compensation is claimed.

N.C.G.S. § 97-2(18) (2001).

For an injury to be compensable under the terms of the Workmen's Compensation Act . . . [t]here must be competent evidence to support the inference that the accident in question resulted in the injury complained of, *i.e.*, some evidence that the accident at least might have or could have produced the particular disability in question. The quantum and quality of the evidence required to establish *prima facie* the causal relationship will of course vary with the complexity of the injury itself. There will be "many instances in which the facts in evidence are such that any layman of average intelligence and experience would know what caused the injuries complained of."

*Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) (quoting *Gillikin v. Burbage*, 263 N.C. 317, 325, 139 S.E.2d 753, 760 (1965)). However, in cases presenting "complicated medical questions far removed from the ordinary experience and knowledge

of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Id.* at 167, 265 S.E.2d at 391. "Reliance on Commission expertise is not justified where the subject matter involves a complicated medical question." *Id.* at 168, 265 S.E.2d at 391.

In a case decided since the Commission's own decision in this case, our Supreme Court has held that in such cases, "expert medical testimony is necessary to provide a proper foundation for the Commission's findings." *Holley v. ACTS, Inc.*, 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). But " 'when such expert opinion testimony is based merely upon speculation and conjecture, . . . it is not sufficiently reliable to qualify as competent evidence on issues of medical causation.' " *Id.* at 232, 581 S.E.2d at 753 (quoting *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000)). " 'The evidence must . . . take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation.' " *Id.* (quoting *Gilmore v. Board of Education*, 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942)).

We find the instant case functionally indistinguishable from *Holley*. In *Holley*, an employee twisted her leg while at work and felt a sudden pain in her left calf. She was subsequently diagnosed with a pulled calf muscle. *Holley*, 357 N.C. at 230, 581 S.E.2d at 751. Approximately six weeks later, the employee developed a painful, swollen leg. She was diagnosed with deep vein thrombosis ("DVT"), a condition caused by a blood clot in a deep vein that obstructed blood flow and caused inflammation. *Id.* at 230, 581 S.E.2d at 751-52. The issue presented to the Court was the sufficiency of the evidence regarding the cause of the employee's DVT. *Id.* at 231, 581 S.E.2d at 752. Although two physicians testified that it was possible that her DVT was caused by her earlier accident, both "were unable to express an opinion to any degree of medical certainty as to the cause of plaintiff's DVT." *Id.* at 234, 581 S.E.2d at 753-54. The Court found the expert testimony revealed that neither of plaintiff's physicians could establish the required causal connection between plaintiff's accident and her deep vein thrombosis." *Id.* at 234, 581 S.E.2d at 754.

Our Supreme Court has recognized that although physicians "are trained not to rule out medical possibilities no matter how remote[,] . . . mere possibility has never been legally competent to prove causation." *Id.*; *Young*, 353 N.C. at 233, 538 S.E.2d at 916.

Although our courts do not require medical certainty, a physician's " 'speculation' is insufficient to establish causation." *Holley*, 357 N.C. at 234, 581 S.E.2d at 754; *Young*, 353 N.C. at 233, 538 S.E.2d at 916. Thus, the Court has held testimony that an event "could" or "might" be the cause of an injury to be insufficient to support a causal connection where there is further evidence tending to show that the expert's opinion is mere guess or speculation. *Young*, 353 N.C. at 233, 538 S.E.2d at 916.

As the case *sub judice* involves a complicated medical question, namely the genesis of plaintiff's paraesophageal hernia, we look to the findings associated with the physicians' testimonies. *Click*, 300 N.C. at 167, 265 S.E.2d at 391. We conclude the Commission's findings do not support its second conclusion of law.

The only findings by the Commission arguably relating to causation involve the testimonies of Drs. Patterson and Lindsey, experts called to testify by defendants. Although we note a third physician, Dr. Michael Norins, testified for plaintiff, he was neither asked his opinion regarding the likely cause or source of plaintiff's hernia nor did he offer such an opinion. Moreover, the Commission made no findings regarding Dr. Norins other than to state that plaintiff "presented to [Dr. Norins] for an annual physical on February 7, 1999" and that he "had no complaints and felt well."

The Commission found that Dr. Patterson testified "when the plaintiff-employee was at work and experienced acute chest pain which eventually subsided, this episode *could have been related to* the plaintiff-employee's p[ara]esophageal hernia." (emphasis added). As the Commission also found Dr. Patterson testified that paraesophageal hernias can be asymptomatic for extended periods and chest pains are only symptomatic of the condition, an opinion by Dr. Patterson that plaintiff's chest pain on 9 February 1999 "could have been *related to*" plaintiff's work related activity tends to show no more than plaintiff felt symptoms of his hernia on 9 February 1999, not causation. (emphasis added). In light of Dr. Patterson's other statements, which were noted by the Commission, this statement is not sufficient to establish a causal connection between the work related activity of lifting the chest of drawers on 9 February 1999 and the genesis of his hernia.

Furthermore, even assuming *arguendo*, Dr. Patterson's statement was probative of causation, due to its speculative nature it would be insufficient to support the conclusion drawn by the Commission. Dr. Patterson merely stated that plaintiff's pain on 9 February 1999

*"could have been* related" to his hernia. (emphasis added). Without some indicia of greater confidence or reliability, evidence that plaintiff's pain was merely possibly related to his hernia is insufficient expert evidence upon which to base a conclusion of causation. *See Holley,* 357 N.C. at 233-34, 581 S.E.2d at 753-54; *Young,* 353 N.C. at 233, 538 S.E.2d at 916. We conclude Dr. Patterson's testimony is within that realm of speculation or guesswork prohibited in forming the basis for a finding that plaintiff's injury was caused by his work related activity. *See Holley,* 367 N.C. at 233-34, 581 S.E.2d at 753-54.

The Commission's only other findings relating to an expert's theory of causation state that "Dr. Lindsey opined that a p[ara]esophageal hernia can be asymptomatic for some time and that there is no way to know exactly when the plaintiff-employee's p[ara]esophageal hernia appeared." The Commission also found that Dr. Lindsey testified, upon being asked whether plaintiff developed the hernia in 1998 or that portion of 1999 prior to February 22, 1999, that "without x-rays of the plaintiff-employee between December 1997 and March 1999, there is no way to establish as a medical fact when the plaintiff-employee's p[ara]esophageal hernia occurred or presented." Rather than supporting the Commission's conclusion, these findings, together with plaintiff's prior complaints of epigastric pain, serve to undermine it.

At most, the Commission's findings support a conclusion that plaintiff, as a carpet layer, was at an increased risk of developing a hernia, that he developed a hernia sometime between 1997 and 22 February 1999, and that his 9 February 1999 pain may have been symptomatic of his hernia. The Commission's findings are completely devoid of any indication that any medical expert concluded there was anything more than the mere possibility that plaintiff's work related activity may have been related to, much less the cause of, his hernia.

Moreover, our review of the record reveals the absence of any record evidence to support findings that would support the Commission's second conclusion of law. The physicians did not render an opinion within a reasonable degree of medical certainty or within *any* discernible likelihood or probability the genesis of plaintiff's hernia. Rather, the entirety of the physicians' testimonies tends to show the cause of plaintiff's hernia remains unclear and the subject of mere speculation.

In addition to the testimony noted by the Commission in its findings, Dr. Patterson also testified, "I don't think anybody really knows

for sure what causes these hernias. . . ." When asked if paraesophageal hernias can by caused by heavy lifting, he responded, "I've really looked a lot in the textbooks for what the cause of these is, and I can't find any definite studies that say. I would certainly think that it's possible, but I can't give you any medical data to support that." Furthermore, Dr. Patterson testified, when asked if he thought plaintiff had his hernia when he examined him on 2 February 1999, "[t]his would just be conjecture. There's no way I can prove this, but I would say yes, most likely it probably was." And Dr. Patterson concluded, "[t]here's certainly no way I could tell you when in time this hernia occurred."

The record does not support a finding that plaintiff's 9 February 1999 work related activity caused the hernia. The findings are insufficient to support a conclusion that plaintiff's injury was caused by his work related activity on 9 February 1999. Plaintiff has failed to carry his burden of proving that his claim is compensable. *See Henry v. A.C. Leather Co.*, 231 N.C. 477, 479, 57 S.E.2d 760, 761 (1950). As we find this issue dispositive, we need not address defendant's remaining assignment of error. The Commission's opinion and award is reversed.

Reversed.

Chief Judge EAGLES and Judge BRYANT concur.