* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms with modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which the parties entered into in the Pre-Trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. It is stipulated that an Employee/Employer relationship existed between Plaintiff and Defendant-Employer on 27 April 2004.
3. Defendant-Employer is insured by U.S. Fidelity and Guaranty/Sedgwick CMS.
4. Plaintiff's average weekly wage on 27 April 2004 was in excess of $1,031.90, which yielded the maximum compensation rate of $688.00 for the year 2004.
5. The issue to be determined is whether Plaintiff sustained a compensable injury on 27 April 2004.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was fifty-one years of age, having a date of birth of January 2, 1954.
2. Defendant-Employer hired Plaintiff in June 1986. In 1993, she was promoted to a district sales manager position. As a district sales manager, Plaintiff was responsible for supervising fourteen sales representatives. The parties stipulated that Plaintiff qualified for the maximum compensation rate for 2004.
3. Plaintiff had a substantial pre-existing history of back problems prior to 27 April 2004. She fell at home from a ladder in April 2002, and complained of low back pain thereafter. *Page 3 
In July 2003, she reported left lower back pain "for the past several months" that continued into August 2003. In August 2003, Plaintiff reported falling and landing on her buttocks and subsequently developing low back pain. She treated with Dr. Stephen Kouba in December of 2003 and January of 2004, for low back pain. A December 2003 MRI showed that Plaintiff had an abnormal signal in the left L5-S1 pedicle extending to the left facet joint and advanced degenerative disc disease at L1-2. Based on MRI and bone scan findings Dr. Kouba recommended facet joint injections and referral to a neurosurgeon. On 15 February 2004, Plaintiff fell at home over an extension cord and landed on outstretched arms and hands. She initially went to the emergency room. She saw Dr. Kouba on 23 February 2004 with complaints of left arm pain and soft tissue swelling. He confirmed that she had a distal wrist fracture of the left wrist and prescribed a vinyl wrist splint. Dr. Kouba provided a note on 29 March 2004 indicating Plaintiff was able to return to work with restrictions of no lifting more than 10-15 pounds until 29 June 2004.
4. Plaintiff also treated with Dr. Viren Desai, who administered nuclear isotope injections in her back to see where her pain was originating. Dr. Desai recommended nerve ablation, and Plaintiff had that procedure performed only three weeks before her alleged date of injury of 27 April 2004.
5. During the week of 27 April 2004, there were a number of sales representatives who were absent from work, so Plaintiff covered a delivery route for one of these representatives. Plaintiff's direct supervisor during this period was Doug Smith.
6. On 27 April 2004, Plaintiff worked the route that included a Fort Bragg PX, which is a "shopette" type of facility. Plaintiff testified that, as she was restocking shelves, she loaded 300 to 400 pounds of inventory from the truck onto a handcart. In trying to maneuver the *Page 4 
handcart from outside to the stock room of the facility, Plaintiff testified that she felt a sharp pain in her back.
7. Plaintiff's supervisor, Mr. Smith, testified that the hand truck Plaintiff would have been using when she was at the Fort Bragg PX only has a 250-pound capacity. He also testified it was unlikely that Plaintiff, with her small body size, would be able to maneuver even 250 pounds on the hand truck.
8. Plaintiff's next stop was at the Womack Hospital PX. Plaintiff testified that she called her fellow district manager, Jim Owens, and told him that she had hurt her back and that he may have to come get the truck. Plaintiff arrived at the Womack Hospital PX, and went into the store to see what was needed and came back and pulled the order from her truck. Plaintiff testified that she then called Jim again to ask for help. From the Womack Hospital PX, Plaintiff went to the distribution center where she testified she needed the assistance of a co-worker, Ms. Minnick.
9. Plaintiff testified that on the next day, 28 April 2004, she got up early and soaked in a hot tub for approximately two hours and then drove to work. She testified that she made it to one store and had to call Mr. Owens for additional assistance. Plaintiff testified she went to the north post PX and was there almost all day when another co-employee, Ms. Santiago, came to help her.
10. Plaintiff finished that week of route driving and thereafter resumed her duties as district sales manager, although there were still times she was required to drive the truck, distribute products, build pallets and perform similar activities to assist sales representatives. Plaintiff acknowledged that she did not miss any time from work following the alleged 27 April 2004 event until Dr. Kouba took her out of work in September 2004. *Page 5 
11. After 27 April 2004, Plaintiff did not seek medical treatment from any doctor until 20 August 2004, almost four months after the alleged incident at work. On that date, when she saw Dr. Kouba, Plaintiff reported that she "bent over three weeks ago and felt a pop in the left side of her low back, with the immediate onset of pain." The pain was "new" and extended into the leg, with numbness into the leg and foot as well.
12. When Plaintiff presented for an MRI one week later, she denied a history of an acute injury. The MRI showed a large herniated disc at L5-S1.
13. Plaintiff testified she has not worked since seeing Dr. Kouba in September 2004.
14. Dr. Kouba referred Plaintiff to Dr. Rene M. Kotzen. Plaintiff first saw Dr. Kotzen on 16 September 2004. Plaintiff reported that for the past 6 to 8 weeks or so she had pain after feeling a pop in her back. The only other history of injury Plaintiff reported to Dr. Kotzen was falling from a ladder a year before. The report of pain after a pop in her back 6 to 8 weeks earlier is consistent with Plaintiff's report to Dr. Kouba on 20 August 2004, that she felt a pop and pain in her back 3 weeks prior.
15. At his deposition, Dr. Kotzen testified he did not remember Plaintiff describing the actual incident leading to her back injury. The only thing he remembered her reporting was that she felt a "pop." Dr. Kotzen documented that Plaintiff reported feeling this "pop" approximately two months before the visit on 16 September 2004, and that her pain gradually got worse. Plaintiff did not mention any work-related incident occurring in April 2004, at that visit. Dr. Kotzen diagnosed a herniated disc at L5-S1. He performed a lumbar microdiscectomy on 28 September 2004.
16. During his deposition, Dr. Kotzen testified that he had engaged in a "confidential conversation" with Plaintiff at a visit on 13 December 2004, where Plaintiff told him she had *Page 6 
hurt herself at work. Plaintiff told him that she did not want it documented because she was afraid of losing her job. Dr. Kotzen could not remember any details about the alleged work-related injury, and he did not have "any vague time frame whatsoever" about when Plaintiff claimed her at-work injury occurred. Dr. Kotzen admitted he had never agreed to keep medical causation "confidential" in any other case with a patient, and that no patient had ever asked him to do such a thing before Plaintiff.
17. Dr. Kotzen testified that a number of the falls or other incidents Plaintiff had prior to her alleged incident at work could have caused her herniated disc. Dr. Kotzen also expressed the opinion that, if Plaintiff had really suffered the herniated disc for which he treated her when she said she did (27 April 2004), she would not have been able to perform her normal job duties on a daily basis for several months due to the pain it would have caused.
18. Dr. Kotzen further testified after being advised of Plaintiff's previous back injuries and considering this information in the context of her "secret" story to him in December that he had doubts about the truthfulness of the history that Plaintiff gave him and upon which his previous opinion regarding causation was based. He then testified, in contradiction to his prior opinion, that he could not express an opinion to a reasonable degree of medical certainty about the causation of Plaintiff's herniated disc. He could only state that something happened to make this disk herniation as large as it was.
19. Plaintiff admitted she never reported that her back symptoms were related to an incident at work to any of her supervisors. Plaintiff testified that she was afraid she would be terminated if she reported the injury. She was aware that Defendant-Employer's Employee Handbook requires injured employees to report accidents to their supervisor and the injury hotline within 24 hours, and that failure to do so could result in termination. When Plaintiff told *Page 7 
Mr. Smith she was going out for surgery in September 2004, she did not mention that the injury was work-related, and applied for the Family Medical Leave Act and short-term disability instead of workers' compensation.
20. Plaintiff also admitted that, while applying for short-term disability, she had a telephone interview with a representative who asked whether her injury was work-related and whether she had filed a workers' compensation claim. Plaintiff answered both questions, "No."
21. Mr. Smith was Plaintiff's direct supervisor at all times relevant to this claim. He testified that Plaintiff successfully reported various other work-related injuries, seemingly less severe than this one in the past. He testified that at no time, including on 27 April 2004 or thereafter, did Plaintiff ever report that she believed she had injured her back while working for Defendant-Employer.
22. Mr. Smith testified that his first knowledge of Plaintiff's alleged work-related injury came in the form of a letter from her (former) attorney dated 16 December 2004. That letter indicated Plaintiff was injured on 19 November 2004, rather than 27 April 2004.
23. The greater weight of the evidence establishes that Plaintiff's claim of suffering a work-related injury due to a specific traumatic incident on 27 April 2004, resulting in a herniated lumbar disc at L5-S1, is not persuasive. Accordingly, the Full Commission finds that Plaintiff did not suffer a compensable specific traumatic incident in her employment resulting in injury to her back on 27 April 2004. Assuming arguendo that Plaintiff has proven an injury due to a specific traumatic incident, she has failed to establish by competent evidence a causal relationship between the alleged 27 April 2004 incident and her herniated disk, which required surgery, and her resulting disability. *Page 8 
24. Also, Plaintiff failed to give notice of her alleged injury to her employer within thirty (30) days as required by N.C. Gen. Stat. § 97-22. The first notice that Defendant-Employer had of Plaintiff's alleged injury was 16 December 2004, almost eight months after the alleged date of injury.
25. Plaintiff testimony concerning the occurrence of a specific traumatic incident on 27 April 2004 is not found to be credible and even if such incident did occur she has not provided a reasonable excuse for her failure to give timely notice to Defendant-Employer. In addition, Defendants were prejudiced by Plaintiff's late notice, in that the delay of almost eight months in having notice of Plaintiff's alleged injury impaired Defendants' ability to investigate the claim.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not suffer a compensable injury by accident or specific traumatic incident arising out of or occurring in the course of her employment with Defendant-Employer on 27 April 2004. N.C. Gen. Stat. § 97-2(6).
2. A Plaintiff in a workers' compensation case has the burden of initially proving "each and every element of compensability," including a causal relationship between the injury and her employment. Whitfield v.Lab. Corp. of Amer., 158 N.C. App. 341, 350, 581 S.E.2d 778, 784
(2003). "The quantum and quality of the evidence required to establish prima facie the causal relationship will of course vary with the complexity of the injury itself." Hodgin v. Hodgin, 159 N.C. App. 635,639, 583 S.E.2d 362, 365 (2003). A Plaintiff must prove causation *Page 9 
by a "greater weight" of the evidence. Phillips v. U.S. Air, Inc.,120 N.C. App. 538, 541, 463 S.E.2d 259, 261 (1995). The North Carolina Supreme Court has also held that in cases involving complicated medical questions, only an expert can give competent opinion testimony as to the issue of causation. Click v. Pilot Freight Carriers, 300 N.C. 164,167, 265 S.E.2d 389, 391 (1980). Where medical opinion testimony is required, "medical certainty is not required, [but] an expert's `speculation' is insufficient to establish causation." Holley v. ACTS,Inc., 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). Furthermore, the causal relationship must be established by evidence "such as to take the case out of the realm of conjecture and remote possibility." Holley,357 N.C. at 232, 581 S.E.2d at 753. Plaintiff has failed to establish a causal relationship between the alleged incident on 27 April 2004, and her herniated lumbar disc. Plaintiff did not provide competent expert medical opinion evidence establishing to a reasonable degree of medical probability that her herniated disc was caused or significantly aggravated by her alleged incident at work on 27 April 2004. Dr. Kotzen, after learning of Plaintiff's numerous prior injuries, her pre-existing back problems, and her failure to mention a work related injury until a "secret" conversation almost 3 months after he began treating her for a herniated disc, ultimately came to the conclusion that he could not opine to a reasonable degree of medical uncertainty that Plaintiff's herniated disc was causally related to a 27 April 2004 injury.
3. Plaintiff did not provide written notice of his injury within the time period set forth in N.C. Gen. Stat. § 97-22, which provides, "[N]o compensation shall be payable unless such written notice is given within 30 days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby." N.C. Gen. Stat. § 97-22. As found as fact above, Plaintiff did not provide a reasonable excuse for *Page 10 
failing to provide written notice of injury within 30 days. In addition, Plaintiff's late filing of written notice of her injury prejudiced Defendants. Therefore, Plaintiff's claim would be barred for failure to give written notice of injury within 30 days pursuant to N.C. Gen. Stat. § 97-22.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. Defendants shall bear the costs of this action.
This the ___ day of October 2007.
 S/______________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/______________________ LAURA K. MAVRETIC COMMISSIONER
 S/______________________ PAMELA T. YOUNG COMMISSIONER *Page 1