***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence except the evidence for which this matter *Page 2 
was reopened, or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms with some modifications the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On May 13, 2004, the employee/employer relationship existed between the Employee-Plaintiff, Teresa Walker and the Employer-Defendant, New Hanover County.
3. At all relevant times herein, the Employer-Defendant New Hanover County was self-insured with The PMA Management Group as its servicing agent.
4. On May 13, 2004, Employee-Plaintiff sustained a compensable injury by accident to her lower back.
5. Plaintiff received temporary total disability benefits from May 14, 2004 through February 28, 2005.
6. Plaintiff returned to work on February 28, 2005, and continues to work for Employer-Defendant.
7. Plaintiff's average weekly wage is $583.14, yielding a compensation rate of $338.79.
8. The following stipulated documents have been entered into the record: *Page 3 
(a) Pre-trial agreement; (b) Medical Records; (c) Industrial Commission Forms; (d) Employment Records; and (e) Discovery Responses.
 *********** ISSUES TO BE DETERMINED a. Whether Plaintiff is entitled to additional temporary partial and total benefits as a result of her May 13, 2004 injury by accident?
 b. Whether Plaintiff is entitled to a change of physician?
 c. Whether Plaintiff is entitled to attorney fees?
 *********** ORDER
Plaintiff's motion for time to file a supplemental brief is DENIED as the Full Commission is of the opinion that additional briefing is not needed.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner Plaintiff was a high school graduate with a certification as a Nursing Assistant II. Her date of birth is March 15, 1965.
2. On May 13, 2004, Plaintiff was involved in a motor vehicle accident while traveling in a vehicle to a client's home. The vehicle Plaintiff was driving was rear-ended while stopped.
3. Immediately after the motor vehicle accident, Plaintiff was seen by the staff in the Emergency Room at New Hanover County Regional Medical Center. Plaintiff complained of *Page 4 
wrist, legs and shoulder pain. Plaintiff was released from the Emergency Room with no physical restrictions and was prescribed Motrin.
4. Plaintiff was seen by Dr. Raja Bhat, her family doctor, on May 17, 2004. Plaintiff gave a history of being rear-ended while driving her employer's car. She complained of a contusion to her left arm, numbness in both legs, pain in the back of her neck, throbbing pain in her right calf muscle, soreness on the inside of her left knee and pain in the right neck area near the spine radiating into her right shoulder, with right arm weakness. Plaintiff's complaints were consistent with the accident.
5. On May 25, 2004, Plaintiff followed up with Dr. Bhat. She complained at that time of sciatic nerve pain down the back of the right leg. Dr. Bhat prescribed Vicodin and recommended physical therapy. On June 3, 2004 Plaintiff complained also of back pain and was using a cane. Dr. Bhat referred Plaintiff to Dr. Mark Rodger, an orthopedic surgeon, but continued to treat Plaintiff. The basic complaints that Plaintiff had throughout the time Dr. Bhat treated her were leg pain and pain down the right lower extremity. Dr. Bhat was of the opinion that the condition for which she treated Plaintiff was "radiculitis, which is a sciatica kind of problem."
6. Plaintiff treated with Port City Physical Therapy for approximately thirty (30) visits between May 19, 2004 and July 29, 2004. During the period Plaintiff was in physical therapy it was recommended that she should use a cane. Don Jarboe, Physical Therapist with Port City Physical Therapy later testified that Plaintiff had completed treatment regarding all objective goals. *Page 5 
7. On June 11, 2004, Plaintiff went back to the New Hanover County Emergency Room complaining of back and leg pain. The Emergency Room doctor gave Plaintiff Prednisone, an oral corticosteroid.
8. On June 17, 2004, Dr. Rodger performed his initial evaluation of Plaintiff. Dr. Rodger suggested that the Plaintiff's symptoms were consistent with disc herniation on the right at the L5-S1 and ordered an MRI. Dr. Rodger reviewed Plaintiff's MRI of July 1, 2004 which was normal with no evidence of any injury or problem. Dr. Rodger further noted that based on Plaintiff's pain complaints he was astonished to find a completely normal MRI of Plaintiff's back. Dr. Rodger testified that he used the word "astonished" as a key to indicate his surprise to find that the MRI did not show what he thought Plaintiff had, but he did not think Plaintiff was misleading him about her pain. He opined that the accident was the most likely cause of the symptoms for which he treated Plaintiff. Dr. Rodger referred Plaintiff to Dr. Ben E. Wall, Physiatrist, for assessment and further treatment.
9. Plaintiff also continued to see Dr. Bhat. Dr. Bhat continued to provide Plaintiff with pain medicine. Employer-Defendant authorized and compensated Plaintiff's treatment with her family doctor, Dr. Bhat; her treatment and evaluation with Orthopedist, Dr. Rodger; her treatment and evaluation with Physiatrist, Dr. Benjamin Wall, her physical therapy as prescribed by Dr. Bhat, her physical therapy as prescribed by Dr. Wall, and her evaluation and treatment by the ER immediately after the auto accident.
10. On August 6, 2004, Plaintiff was first evaluated by Dr. Wall, who is board certified in physical medicine and rehabilitation and has an additional certification in pain medicine. Plaintiff related her pain to her vehicle accident. Plaintiff's complaints to Dr. Wall included pain radiating to her right lower extremity. Dr. Wall assessed SI joint dysfunction, which he described *Page 6 
as an up slip of the sacroiliac joint. He recommended physical therapy and S.I. joint injections. Dr. Wall continued providing Plaintiff with pain medicine.
11. On January 7, 2005, Dr. Wall concluded Plaintiff's S.I. joint dysfunction was "improved." He ordered a Functional Capacity Evaluation (FCE) and returned Plaintiff to light-duty work, restricting her to: no lifting, pushing, or pulling over 10 lbs., no twisting, squatting or kneeling, no sitting for more than 40 minutes per hour, no lifting more than 10 pounds and no use of vibrating tools. These restrictions were subject to modification based on the FCE. Defendant-Employer could not accommodate these restrictions. After the Functional Capacity Evaluation which indicated Plaintiff could do medium duty work, Dr. Wall gave Plaintiff a 3% rating to her back based on the SI joint dysfunction and removed all work restrictions. Plaintiff returned to full duty work in February 2005. Dr. Wall refused to see her again, stating that workers' compensation would not approve further visits. He testified, however, that he would have been willing to provide further treatment of Plaintiff.
12. Dr. Wall was of the opinion that the motor vehicle accident could have caused the SI joint problems for which he diagnosed and treated Plaintiff and that if Plaintiff continued to have problems of the same nature, she would need ongoing medical treatment.
13. Dr. Wall testified that there are multiple bursa throughout the body, which are just pockets of fluid that help the joints move correctly. The trochanteric bursa is located around the hip and when there is an inflammation of that bursa it becomes bursitis and can cause pain. An antalgic gait can possibly cause trochanteric bursitis or could be the result of trochanteric bursitis
14. Don Jarboe performed a Functional Capacity Evaluation on February 3, 2005. Mr. Jarboe concluded that "Ms. Walker is currently demonstrating the ability to perform functional work relate[d] activities at the frequencies in the Functional Abilities Summaries on pages 3 and *Page 7 
11 of this report. She is able to perform work at the medium physical demand classification as determined by the U.S. Department of Labor for an 8-hour workday. She is able to meet the physical work demands of her occupation as a CNA-II as long as lifting requirements do not exceed 10 lbs. for over-shoulder height activities. Based on the amount of statistically invalid and submaximal efforts identified in this evaluation, Ms. Walker's true abilities likely exceed those identified in this report."
15. On Monday, February 21, 2005, at 4:03 in the morning, the day Plaintiff was scheduled to return to work full-duty work as directed by Dr. Wall; Plaintiff went to the ER at New Hanover County Medical Center complaining of chronic back pain and right leg pain. The ER administered Dilaudid, a narcotic analgesic, and Phenergan at Plaintiff's right hip. Two hours later Plaintiff had received no relief and the ER released Plaintiff to follow-up with her doctor. The ER doctor removed the Plaintiff from work for one day.
16. On March 11, 2005, Plaintiff was seen by Dr. Joe T. Minchew, an orthopedic surgeon, upon Plaintiff's own and without authorization from Defendants. Plaintiff complained of low back pain and right lower extremity pain. Dr. Minchew noted a psychiatric/emotional, depressed mood. Upon examination of the Plaintiff and review of her MRI, Dr. Minchew concluded that the etiology of the Plaintiff's complaints was unclear; there was no explanatory pathology related to her lumbar spine; her complaints exceeded any objective physical findings, and that he would not recommend any further diagnostic testing and surgical evaluation related to the spine. Plaintiff was advised to obtain a pain management consult and possibly a physical medicine and rehabilitation consult and to return to work, full duty.
17. Dr. Minchew was of the opinion that Plaintiff did not have trochanteric bursitis and that Plaintiff showed evidence of symptom magnification, which was not necessarily malingering. *Page 8 
18. On March 30, 2005, Plaintiff returned to the ER complaining of "throbbing" in her right leg. The ER doctor again administered Dilaudid, a narcotic analgesic, to Plaintiff's right hip. Plaintiff was removed from work for one day and told to follow-up with her doctor.
19. Plaintiff was then treated by Chiropractor Donald R. Reece between March 31, 2005 and May 4, 2005.
20. On May 5, 2005, Plaintiff began treatment with Dr. Sunil K. Arora, an expert in pain management medicine. Plaintiff's chief complaint was pain in her lower back and leg, primarily the right leg. The pain was localized more over the right buttock and radiating down to a small area behind her right knee joint. Plaintiff did not mention shoulder pain or numbness. Dr. Aurora did testing for Waddell signs of pain magnification, which was negative. She determined that Plaintiff had "a real problem." The Patrick test was positive for either hip or an SI joint problem. Dr. Arora diagnosed trochanteric bursitis and SI joint dysfunction.
21. Dr. Aurora was of the opinion that Plaintiff had an SI joint dysfunction, rather than a nerve problem and that the SI joint problem was causally related to her vehicular accident and caused her to have an antalgic gait. She further opined that Plaintiff's chronic pain is incurable but her pain improved with the narcotic medication she has been prescribed. Dr. Aurora recommended SI joint injections. Two SI injections were administered and Plaintiff reported 10% pain improvement with the first injection and some relief with the second injection.
22. On April 15, 2005, Plaintiff began treatment with Dr. Steven Hirsch, who is an expert in internal medicine. Plaintiff complained of significant back pain, radiating down her leg. Plaintiff had difficulty walking and was using a cane. The history Plaintiff gave of her injury by accident was consistent with the injuries Dr. Hirsch found. Dr. Hirsh diagnosed nerve damage and muscle weakness and prescribed non-narcotic medication for her neurological pain. Dr. Hirsh *Page 9 
did not take Plaintiff out of work. On April 21, 2005, Plaintiff returned to Dr. Hirsch to review labs and follow-up on her back pain. On April 24, 2005, Plaintiff underwent a second MRI of her lumbar spine and an MRI of her right hip. The new MRI's showed a "Normal Right Hip MRI" and "Normal Non-Contrast MRI of the lumbar spine."
23. Dr. Hirsh referred Plaintiff to Dr. S. Susan Torres for a Nerve Conduction Study performed on May 4, 2005. Dr. Torres' interpretation of the Nerve Conduction Study suggested an L5 nerve root impingement and inflammation of the right bursa. Dr. Torres concluded that the impingement was a "very minor finding" and further testified that "we find that kind of thing all the time and that alone doesn't account for a person being in a lot of pain or having severe weakness." Dr. Torres further testified that Plaintiff's trochanteric bursitis is "completely unrelated" to her impingement. She did not suggest any treatment for Plaintiff. Dr. Torres is board certified in neurology.
24. On May 12, 2005 Plaintiff returned to Dr. Hirsch for review of MRIs and the Nerve Conduction Study. At her June 28, 2005 visit Plaintiff was still having back pain and Dr. Hirsh continued her on the same and one different medication. Plaintiff followed-up with Dr. Hirsch on October 10, 2005 regarding her back. Plaintiff's two visits following the October 10, 2005 evaluation were both unrelated to her back complaints. He last treated Plaintiff on November 29, 2006.
25. After reviewing the medical records of other providers in preparation for deposition as well as his own records, Plaintiff's reported history was not inconsistent with the accident she sustained. Dr. Hirsch was of the opinion that Plaintiff has significant pain in the left hip area, which will most likely continue indefinitely. Pain control will be her major problem. According to the records, Plaintiff had already had 8 steroid injections, 5 in the sacroiliac joint and *Page 10 
3 in the trochanteric bursa, without any longstanding relief. His treatment focused on trying to control the pain with non-narcotic medication.
26. On May 18, 2005, Plaintiff returned to the ER complaining of "pain from back to lower leg." The Emergency Room medical provider again administered Dilaudid, a narcotic analgesic, at Plaintiff's right hip. Plaintiff was told to follow-up with her doctor and was not removed from work.
27. Plaintiff received additional chiropractic care from Graybar Healthcare, logging approximately twenty-seven (27) visits between July 18, 2005 and September 15, 2005. At conclusion of Plaintiff's treatment, Graybar reported only "slight" improvement and range of motion as "restricted in all degrees and planes."
28. On September 29, 2005, Dr. Arora recommended a right greater trochanteric bursa injection, but Plaintiff chose not to have an injection. On October 10, 2005, Dr. Arora reported that Plaintiff had "not responded significantly to injectional therapy."
29. Plaintiff received trigger point injections in the trochanteric bursa on December 5, 2005, December 20, 2005 and February 8, 2006. At first, Plaintiff reported "50-60% relief lasting for a month and half." Plaintiff was next seen by Dr. Arora on September 19, 2006 wherein she was "tearful when asked . . . how she was doing." On September 19, 2006 Plaintiff was provided a new prescription for pain medication and asked to follow-up in three months.
30. At the time of the hearing before the Deputy Commissioner and the Full Commission review Plaintiff continued to work for Defendant-Employer and continued to complain of pain of the same character as she had during her last visit to Dr. Aurora. The Full Commission reopened the record for an Independent Medical Examination, which was performed on November 18, 2008 by Dr. Paul J. Tawney. *Page 11 
31. According to Dr. Tawney, Plaintiff presented with a "constellation of symptomatic manifestations which didn't make particular organic sense." Plaintiff was still on narcotic medication, but continued to complain of pain. He could not find anything specific that would identify the source of her complaints of right leg weakness and give-away. Plaintiff did complain of some pain and discomfort in her pelvic area, but if the SI dysfunction diagnosed by Dr. Wall had gotten worse, he felt Plaintiff would have more focal, localized pain in the pelvic region. There were no objective findings of sciatic nerve damage. He noted the finding of L-5 radiculopathy on the EMG, but found that Plaintiff's symptoms were not consistent with an L-5 radiculopathy. He could not relate Plaintiff's complaints in the greater trochanter area to anything. He diagnosed symptomatic right-sided low back pain with right leg radiation. His diagnosis was based upon Plaintiff's description, his observations and examination.
32. Dr. Tawney did not make any independent evaluation of Plaintiff's work capacity but he agreed with the 3% rating to the back given by Dr. Wall based upon her condition at the time of evaluation and deferred to other doctors who were of the opinion that she could work based on the FCE. He testified that the sacroiliac dysfunction was minimal by the time he saw Plaintiff and that some of her constellation of symptoms reported to him could be related to L-5 radiculopathy. He did not believe Plaintiff was malingering.
33. The Full Commission finds based on the greater weight of the evidence that Plaintiff's low back injury, her SI joint dysfunction, and the L-5 radiculopathy are causally related to the injury by accident on May 13, 2004. Defendants stipulated in the Pre-trial Agreement that Plaintiff sustained a compensable injury to her lower back on May 13, 2004 and there is no basis to set aside the stipulation. *Page 12 
34. There is insufficient evidence from which to find that Plaintiff developed trochanteric bursitis as a result of the injury by accident on May 13, 2004.
35. As a result of her injury Plaintiff has chronic low back and right leg pain which is likely incurable. Based upon the greater weight of the evidence, the Full Commission finds that Plaintiff has failed to prove that she has been incapable of working since her release to return to full duty work in February 2005.
36. The Full Commission further finds that Plaintiff has ongoing complaints of low back and primarily right leg pain related to her injury by accident for which she is likely to be incurable and for which she is likely to continue to need medical treatment, especially pain management as suggested by Dr. Tawney. Pain management treatment in the future, including medication management, is reasonably required as a result of Plaintiff's injury and would tend to lessen her disability or provide relief. Plaintiff's current complaints of pain are causally related to her admittedly compensable injury.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 13, 2004, Plaintiff sustained a compensable injury to her wrist, leg, back, arm and shoulder arising out of and in the course of her employment with Employer-Defendant as a result of a motor vehicle accident. N.C. Gen. Stat. § 97-2(6).
2. The claimant in a workers' compensation case bears the burden of initially proving "each and every element of compensability," including a causal relationship between the injury and his employment.Whitfield v. Lab. Corp. of Amer., 158 N.C.App. 341, 350, 581 S.E.2d 778,784 (2003). "The quantum and quality of the evidence required to establish prima facie the causal *Page 13 
relationship will of course vary with the complexity of the injury itself." Hodgin v. Hodgin, 159 N.C.App. 635, 639, 583 S.E.2d 362, 365
(2003). The greater weight of the evidence establishes that Plaintiff's SI joint dysfunction and L-5 radiculopathy are causally related to her compensable injury, however, Plaintiff's trochanteric bursa complaints are not related to the vehicular accident of May 13, 2004. As a result of her compensable injuries Plaintiff is entitled to medical treatment for all of her compensable conditions. The medical treatment Plaintiff has received as more fully described above and in stipulated medical records, including her SI joint dysfunction, back and leg pain and weakness, neurological problems, and L-5 radiculopathy symptoms was reasonably required and tended to effect a cure provide relief and/or lessen her disability. Defendant is obligated to pay for such treatment. Defendant is not obligated to pay for treatment for trochanteric bursitis. N.C. Gen. Stat. §§ 97-25; 97-2(19).
3. Plaintiff has established that there is a substantial likelihood that she will need future medical treatment for her chronic pain and other symptoms related to her injury. Defendant is responsible for providing such medical treatment in the future. N.C. Gen. Stat. § 97-25.1.
4. Plaintiff's request for approval of unauthorized treatment related to her compensable injury was made in a reasonable time and in the discretion of the Full Commission is approved. Defendant is obligated to pay for all past medical treatment related to Plaintiff's injury. However, Plaintiff's request for further medical treatment from a physician of her choice is denied as Defendant has established a willingness to provide reasonable treatment. Plaintiff needs pain management treatment from a specialist and she needs a family practice physician or internist to treat her other injury related conditions. Defendant is obligated to provide such treatment. Dr. *Page 14 
Hirsch and Dr. Arora appear to be in the best position to provide these services. N.C. Gen. Stat. § 97-25.
5. Plaintiff is entitled to permanent partial disability compensation for the 3% rating to her back. N.C. Gen. Stat. § 97-31.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional medical treatment is GRANTED.
2. Plaintiff's claim for additional temporary total disability benefits is DENIED at this time.
3. Plaintiff's claim for change of physician is DENIED; however, Plaintiff's request for approval of prior medical treatment from a physician of his own choosing is GRANTED.
4. Plaintiff's request for attorney fees is DENIED.
5. Defendant shall pay to Plaintiff permanent partial disability compensation at the rate of $338.79 for 9 weeks for the 3% rating to her back. This compensation has accrued and shall be paid in a lump sum.
6. An attorney fee of 25% is approved for Plaintiff's attorney from the lump sum due Plaintiff
7. The Defendant shall pay the costs.
 This the ___ day of January 2008. *Page 15 
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ BUCK LATTIMORE COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1