***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named plaintiff and defendant-employer.
3. The carrier liable on the risk is North Carolina Farm Bureau Mutual Insurance Company.
4. Plaintiff's average weekly wage is $225.18 per week.
5. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 a. Stipulated Exhibit 1: Pre-Trial Agreement;
 b. Stipulated Exhibit 2: Plaintiff's medical records (Pages 1-62);
 c. Stipulated Exhibit 3: Industrial Commission forms and filings (Pages 1-7);
 d. Stipulated Exhibit 4: Discovery responses (Pages 1-23);
 e. Stipulated Exhibit 5: Plaintiff's recorded statement (1-13);
 f. Stipulated Exhibit 6: Correspondence regarding surveillance (Pages 1-6); and
 g. Stipulated Exhibit 7: Surveillance System Manual (Pages 1-52).
6. The issues for determination by the Full Commission are whether plaintiff sustained an injury by accident as defined by N.C. Gen. Stat. § 97-2(6) and, if so, to what benefits is plaintiff entitled; and whether plaintiff provided adequate notice to defendant-employer as required by N.C. Gen. Stat. § 97-22.
 *********** *Page 3 
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 45 years old. Plaintiff completed the eighth grade.
2. Plaintiff's prior work experience includes performing housekeeping duties with hotels and commercial real estate companies and working in the produce section for a grocery store.
3. In April 2008, plaintiff began working for defendant-employer. Plaintiff was hired by the owner, John Jarvis, to operate the cash register, stock the cooler and shelves, and clean the store. Plaintiff worked between four to seven days per week, for approximately 38 to 40 hours per week.
4. On December 26, 2008, a leak occurred in the back of the storage room where plaintiff worked. Mr. Jarvis asked plaintiff and a co-worker, Dante Lawrence, to move cases of beer and soft drinks from the right hand side of the storeroom, where the leak was located, to the other side of the room away from the leak.
5. Plaintiff testified that as Mr. Lawrence was moving the cases, a case of beer started to fall and she reached up with her right arm to prevent the case from falling. When plaintiff caught the box, she stated the impact caused her arm go down and she immediately felt pain and a pulling sensation in her right shoulder.
6. Dante Lawrence, the co-worker who was working with plaintiff on December 26, 2008, did not testify; however, plaintiff did not recall whether she informed Mr. Lawrence that she had injured her right shoulder. *Page 4 
7. Plaintiff worked approximately three more hours to complete her shift. Plaintiff did not report the injury to Mr. Jarvis on December 26, 2008, because he was not present at the store.
8. When plaintiff awoke the next morning, her shoulder was very painful; nonetheless, she reported to work as scheduled. At the hearing before the Deputy Commissioner, plaintiff stated that she informed Mr. Jarvis, her supervisor, that her shoulder hurt but she could not recall if she specifically described the incident of the falling beer case as the cause. Plaintiff did admit that she may have informed Mr. Jarvis she felt she "slept wrong."
9. According to Mr. Jarvis's testimony at the hearing, plaintiff did not allege that her shoulder pain was related to any specific incident on December 26, 2008.
10. On January 2, 2009, plaintiff presented to the Emergency Room of Washington County Hospital. Plaintiff stated that she waited so long to seek medical treatment because she did not have health insurance. At this visit, plaintiff denied any specific injury or trauma. The physician's assistant who examined plaintiff noted tenderness and limited range of motion of the right shoulder, secondary to pain. Plaintiff was prescribed Motrin and Vicodin and was instructed to follow up with an orthopedic surgeon.
11. Plaintiff did not receive any relief from her pain, so on January 4, 2009, she presented to the Emergency Room at Albemarle Hospital in Elizabeth City, with complaints of right shoulder pain. Plaintiff again denied any specific injury or acute incident precipitating the symptoms, but stated that she frequently lifted heavy boxes at work and thought this activity may have aggravated her shoulder condition.
12. Plaintiff also did not mention that two days earlier she was treated at the Emergency Room of Washington County Hospital. The Albemarle Hospital records specifically *Page 5 
indicate that plaintiff had no prior treatment for her shoulder. Plaintiff was again prescribed Vicodin as well as Prednisone and Valium.
13. On or about January 9, 2009, plaintiff met with Mr. Jarvis at the store to discuss filing a workers' compensation claim. Mr. Jarvis denied that plaintiff reported she had hurt her shoulder when she reached her hands above her head to catch a falling box of beer. Mr. Jarvis indicated that it was his understanding, at that time, that plaintiff thought her right shoulder pain was caused by repetitive lifting at work, which is what he recorded on the Form 19 Employer's Report of Employee'sInjury.
14. Plaintiff testified that when she and Mr. Jarvis prepared the Form 19, she simply did not think to mention that the precipitating cause of her shoulder pain was an attempt to catch a falling box of beer.
15. On January 16, 2009, plaintiff provided a recorded statement of the events of December 26, 2008. Plaintiff did not inform the adjuster about the box falling on December 26, 2008. Throughout the interview, plaintiff never described an unexpected event or specific incident that gave rise to her right shoulder pain, but instead stated she felt her pain was caused by lifting. At the hearing before the Deputy Commissioner, plaintiff explained this omission was due to the fact that she was on medication, in pain, and confused by the questions.
16. After conducting the interview, the adjuster for defendant-carrier completed a Form 61 Denial of Workers'Compensation Claim on the grounds that plaintiff did not sustain an injury by accident and was performing her normal work in the usual and customary manner.
17. On January 20, 2009, plaintiff presented to Dr. George J. Miller, an orthopedic surgeon, with complaints of severe pain and stiffness in the right shoulder. At this time, plaintiff reported the onset as being sudden, but without injury, about one month prior. Dr. Miller *Page 6 
diagnosed plaintiff with bursitis and impingement syndrome. Dr. Miller released plaintiff from work for two weeks.
18. Based on the examination and history reported by plaintiff at that visit, Dr. Miller opined there was a relationship between the onset of her symptoms and her work activity of lifting above her head and shoulders.
19. On January 26, 2009, plaintiff completed a Form 18 Notice ofAccident to Employer. Plaintiff's Form 18 described the event of reaching up to catch a falling box.
20. Plaintiff provided written notice of her claim for workers' compensation benefits within thirty days of the alleged occurrence on December 26, 2008.
21. On February 3, 2009, plaintiff returned to Dr. Miller, who recorded that plaintiff "is currently in the appeals process" with her workers' compensation claim and "has new history today that there was a falling box at work and she reached overhead to try to catch this." Dr. Miller recommended an MRI of plaintiff's right shoulder and continued plaintiff's work restrictions.
22. On September 2, 2009, plaintiff presented to Dr. Carl J. Hiller, an orthopedic surgeon, for an independent medical evaluation, at the request of defendants. Plaintiff reported an incident involving a falling case and that her shoulder started hurting a few days later, when she presented to the Emergency Room. Dr. Hiller performed a physical examination of plaintiff and completed a medical records review.
23. During the physical examination, Dr. Hiller noted that plaintiff was extremely protective of her right arm and shoulder. He also noted marked guarding. Dr. Hiller was unable to test plaintiff's right arm muscles as well as rotators due to plaintiff's complaints of pain or anticipated pain. Dr. Hiller concluded that plaintiff's physical examination was inconclusive *Page 7 
because of her guarded participation and that the examination was only consistent with chronic bursitis and/or chronic impingement syndrome.
24. As a result, Dr. Hiller also recommended an MRI, which was performed on September 29, 2009, and revealed calcification and longitudinal partial tears. Dr. James K. Tarver, a radiologist specializing in musculoskeletal radiology, opined that the findings were mostly compatible with a degenerative process.
25. Dr. Hiller opined that plaintiff's medical records indicate a progressive process of degenerative impingement and degenerative rotator cuff disease. Dr. Hiller explained, in determining causality, that the earliest records in a forensic review are most important because memory is much better at the onset. Dr. Hiller noted that it was not until plaintiff presented to Dr. Miller on January 20, 2009, that she first reported a sudden onset of shoulder pain at work but not due to trauma, and not until February 3, 2009, that plaintiff related her shoulder pain to an incident of a box falling at work on December 26, 2008.
26. Dr. Hiller stated that torn tissue in the body is immediately painful, particularly if it is a muscle or tendon. He believed that if an incident caused any tissue to be torn, bruised, destroyed or damaged, a person would be immediately aware of the seriousness of the injury. Dr. Hiller stated that the same circumstances would be true for an aggravation.
27. Because of the objective findings of degenerative processes, with no diagnostic evidence of specific trauma, coupled with plaintiff's failure to describe a specific event giving rise to her symptoms to any medical provider for over one month following the alleged event, Dr. Hiller opined to a reasonable degree of medical certainty, and the Full Commission finds, that plaintiff's right shoulder condition was more consistent with a degenerative process rather than the acute injury she eventually described after her claim was denied. *Page 8 
28. Dr. Miller subsequently reviewed the MRI report during his deposition on January 20, 2010, and agreed there was "nothing about the findings on the MRI that indicates a specific trauma . . . There are longitudinal degenerative tears within the tendon. There's nothing here that says this is due to that one rapid lifting episode." Dr. Miller explained that degenerative tears in the supraspinatus muscle are typically longitudinal in shape, and that traumatic tears tend to be more transverse.
29. Dr. Miller stated that assuming it were true that there was an event with rapid overhead reach to catch a falling box of beer and that plaintiff had no pain in the shoulder prior to the event, then he felt that a snapping motion overhead could also cause her underlying degenerative processes to become symptomatic. Dr. Miller agreed that the validity of this opinion depended on the accuracy of the history provided by plaintiff and that she in fact had no prior symptoms before the alleged event of December 26, 2008.
30. The Full Commission gives greater weight to the causation opinions of Dr. Hiller, based on the depth and extent of his orthopedic experience, than to the opinions of Dr. Miller.
31. Based upon the totality of the evidence of record, the Full Commission finds that there is insufficient evidence to establish by the greater weight that plaintiff's right shoulder condition is causally related to any incident occurring at work on December 26, 2008.
32. The Full Commission finds that there is insufficient evidence to establish by its greater weight that on or about December 26, 2008, plaintiff sustained an injury by accident to her right shoulder, arising out of and in the course of her employment with defendant-employer or that any present disability is related to an event occurring on December 26, 2008. *Page 9 
33. Plaintiff has not returned to work since January 2, 2009. Plaintiff stated at the hearing before the Deputy Commissioner that she continues to have right shoulder pain and difficulty performing day-to-day activities and has not looked for any other employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In a workers' compensation case, plaintiff has the burden of proving compensability. As part of this burden, plaintiff must present convincing evidence establishing the elements of compensability. Whitfield v. Laboratory Corp. of Am.,158 N.C. App. 341, 350, 581 S.E.2d 778, 784 (2003); Harvey v.Raleigh Police Dept., 96 N.C. App. 28, 384. S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989); Gaddy v. Kern,17 N.C. App. 680, 683, 195 S.E.2d 141, 143, cert. denied,283 N.C. 585, 197 S.E.2d 873 (1973).
2. In this case, plaintiff has failed to meet her burden of proving by the greater weight of the evidence that she sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer on December 26, 2008. N.C. Gen. Stat. §§ 97-2(6),-2(9); Harvey v. Raleigh PoliceDept., supra; Gaddy v. Kern, supra.
3. Plaintiff has produced insufficient evidence to prove that her right shoulder condition is a direct and natural result of any incident that took place on or about December 26, 2008, or that any incident that took place on or about December 26, 2008, materially exacerbated or aggravated any preexisting condition. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000); *Page 10 Hodgin v. Hodgin, 159 N.C. App. 635, 583 S.E.2d 362 (2003);Peagler v. Tyson Foods, Inc.,138 N.C. App. 593, 532 S.E.2d 207 (2000).
4. Plaintiff has the burden of proving disability, and plaintiff must prove both the existence and the extent of disability. Disability is defined by the Act as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment." N.C. Gen. Stat. § 97-2(9). In this case plaintiff failed to meet her burden of proving the existence and extent of any disability that resulted from a work-related injury. N.C. Gen. Stat. § 97-2(9); Hilliard v. Apex CabinetCo., 305 N.C. 593, 290 S.E. 2d 682 (1982); Hall v. ChevroletCo., 263 N.C. 569, 575, 139 S.E. 2d 857, 861 (1965); Sims v.Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the North Carolina Workers' Compensation Act, plaintiff's claim must be and hereby is denied.
2. Each side shall bear its own costs.
This 2nd day of February, 2011.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING: *Page 11 
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER