***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission reverses the Opinion and Award of Deputy Commissioner Stanback.
 ***********
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act. *Page 2 
2. An employer-employee relationship existed between the named employee and the named employer on January 10, 2008.
3. The named employer is self-insured.
4. On January 10, 2008, Plaintiff's average weekly wage is to be determined as set out on a Form 22.
5. Plaintiff sustained a compensable injury to his left heel on January 10, 2008, and Plaintiff alleges he also injured his back on or about January 10, 2008.
6. Plaintiff has not returned to work since he was injured on January 10, 2008.
7. Documents entered into evidence include the following:
 a. Stipulated Exhibit #1 — Pre-Trial Agreement
 b. Stipulated Exhibit #2 — Industrial Commission Forms
 c. Stipulated Exhibit #3 A, B, C — Plaintiff's medical records
 d. Stipulated Exhibit #4 A-D — Photographs of scene
 e. Stipulated Exhibit #5 A — I — Photographs of Plaintiff's injury
 f. Stipulated Exhibit #6 — Plaintiff's recorded statement
 g. Defendant's Exhibit #1 — September 17, 2008 memo from Terry Herring to Ilsa Spaulding
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On January 10, 2008, Plaintiff had worked for Defendant-Employer since August 2007. At the time of the accident, Plaintiff had begun work for Employer-Defendant as a *Page 3 
Landscape Tech. I Trainee, pending receipt of his license to handle pesticides. His job in the Cumberland County Landscaping Department included the use of a back-mounted blower at various locations throughout Cumberland County, including at the Main Public Library located at 300 Maiden Lane, Fayetteville, North Carolina.
2. On January 10, 2008, Plaintiff was operating a back-mounted blower in the area of the Main Public Library, with a crew of other Landscape Department employees. At approximately 8:15 a.m., Plaintiff lost his balance on wet leaves, and fell off a retaining wall and down a distance of approximately six feet onto a concrete driveway, landing on his left heel with all his weight, and then falling onto his buttocks, ending up in a sitting position on the concrete driveway. Plaintiff remained on the ground until he was discovered by fellow workers.
4. A Form 60 was filed with the Industrial Commission accepting liability for the incident, and Plaintiff has been receiving temporary total disability compensation since January 22, 2008 and continuing at the rate of $315.89, based upon an average weekly wage of $473.81.
5. On the date of injury, Plaintiff was taken to the Cape Fear Valley Occupational Health Services for evaluation and treatment where he was diagnosed by Dr. Howard Stansberry with a left calcaneal fracture from a fall. Plaintiff was unable to bear weight on his left foot, and was instructed to wear a splint/boot, elevate his left foot, apply ice to his left foot, refrain from all weight-bearing on the left foot, and to take Percocet for pain.
6. Upon referral by Dr. Stansberry, Plaintiff was evaluated and treated by Dr. Walter Greene at Cape Fear Orthopaedic Clinic, beginning on January 15, 2008. Dr. Greene ordered a CT scan since Plaintiff was complaining of pain in his left heel and radiating to the tibia. At this visit, Plaintiff also complained of back pain. Following the CT, Dr. Greene recommended non-surgical *Page 4 
management of the heel fracture. Dr. Greene noted that Plaintiff has a history of diabetes and previous peripheral neuropathy.
7. In a recorded statement on January 16, 2008, Plaintiff stated that he did not have any other injuries in addition to his left heel and that he was not experiencing pain in any other part of his body.
8. On January 28, 2008, Plaintiff was admitted to Cape Fear Valley Medical Center with complaints of severe back pain, which was worse on the left, associated with back spasm. Dr. Richard Byakika noted that Plaintiff had back xrays performed on January 10, 2008 which showed stable postoperative changes of L4-L5 with progressive degenerative changes at L5-S1. No fracture was seen. Dr. Byakika assessed Plaintiff as having back pain and back spasm and recommended an MRI. On the date of Plaintiff's admission, Plaintiff was started on a regimen of IV fluids. On February 3, 2008 it was recommended that Plaintiff continue pain management treatment and IV fluids were added with thiamin and folic acid supplements.
9. On February 4, 2008, Plaintiff was referred to Dr. Obiefuna Okoye for a consultation for persistent MRSA bacteremia. Dr. Okoye noted that Plaintiff had an indurated swelling on his left arm which Plaintiff attributed to his IV lines. Dr. Okoye also noted an ulcerated scalp wound. Antibiotics, wound care, and continued pain management were recommended.
10. After Plaintiff was discharged from Cape Fear Valley Medical Center on February 18, 2008, Plaintiff continued treatment with Dr. Greene at Cape Fear Orthopaedic Clinic. According to Dr. Greene, it was thought that Plaintiff's bacteremia for which he was treated in February 2008 was caused by a lesion on his head. As Plaintiff's back pain continued, Dr. Greene requested his partner, Dr. Stephen Kouba, to evaluate Plaintiff's back pain to separate *Page 5 
the back injury from the heel injury that Dr. Greene had been treating. Dr. Kouba recommended that Plaintiff attempt to secure a TENS unit for pain control related to his back, and provided no further evaluation or care of Plaintiff. During the spring, Plaintiff's back continued to cause him problems, and he saw several pain management doctors multiple times, including Drs. Kishbaugh and DeSai. An office note by Dr. Waden on March 4, 2008 noted that Plaintiff had multiple surgeries in 2001 for a lumbar epidural abscess, for which the cause was unknown. Plaintiff's medical history shows that Plaintiff had previously developed a MRSA infection at a postoperative surgical site following a lumbar fusion in 2001.
11. Dr. Greene continued to follow Plaintiff's heel injury through July 15, 2008, when Dr. Greene noted that Plaintiff was doing better from foot pain over the past five or six weeks, but that he still was having significant back pain, for which he was on several medications.
12. On July 15, 2008, Dr. Greene opined that, with regard to Plaintiff's heel injury, Plaintiff could return to work on Monday, July 21, 2008. Dr. Greene has since assigned Plaintiff with a twenty percent (20%) permanent partial disability to his foot.
13. On July 21, 2008, Plaintiff presented to Cape Fear Valley Medical Center, complaining of persistent and severe low back and left shoulder pain. Plaintiff gave a history of problems with MRSA vertebral osteomyelitis. Plaintiff provided the admitting physician with a July 7, 2007 scan showing significant progression of discitis or vertebral osteomyelitis. Plaintiff was treated in the hospital until July 28, 2008, when he was transferred to Duke University Medical Center for neurosurgical and infectious disease opinions.
14. Upon arrival at Duke University Medical Center, Plaintiff underwent urgent neurological consultation for his osteomyelitis and MRSA bacteremia. Dr. Isaacs performed an *Page 6 
emergency cervical thoracic laminectomy on Plaintiff due to the finding of discitis osteomyelitis at L3-L5 with near complete erosion of L4, paravertebral extension to right posoas muscle, dorsal enhancing fluid collection from mid-thoracic spine to L1, and likely epidural abscess.
15. Following Dr. Isaacs's successful surgical intervention, Plaintiff was discharged from Duke University Medical Center on August 13, 2008, with orders for a six week course of antibiotics by IV for treatment of the MRSA abscess.
16. During rehabilitation at another facility Plaintiff was removed from IV antibiotics prior to the completion of the six week course that had been ordered by Dr. Isaacs. Dr. Isaacs was concerned that Plaintiff's being removed from the antibiotics prematurely led to the progression of his condition. Plaintiff began experiencing pain at the site of his surgical incision around August 22-23, 2008, and was re-admitted to Duke University Medical Center on September 10, 2008, with complaints of constant neck pain radiating to the back of his shoulders. During this admission to Duke University Medical Center, Dr. Isaacs performed on Plaintiff a cervical vertebrectomy at C7, thoracic vertebrectomy at T1-T2 with anterior cervical thoracic instrumentation at C6-T3, and anterior thoracic reconstruction at C6-T3.
17. Plaintiff remained hospitalized at Duke University Medical Center until September 25, 2008, during which time he was intubated and tube-fed due to problems with swallowing, recurrent infections, and difficulty controlling his blood sugar levels. Plaintiff was discharged with a PICC line for continued IV antibiotic therapy, and ordered to wear a spine brace when not in bed, and to pursue out-patient occupational and physical therapy.
18. On October 17, 2008, Plaintiff presented to the Duke University Medical Center Infectious Disease Division for evaluation and treatment of MRSA bacteremia and cervical/thoracic MRSA infection. At that time, Dr. Isaacs found that Plaintiff was recovering *Page 7 
well from his back surgeries performed in September 2008. Plaintiff continued treatment with the Duke University Medical Center Infectious Disease Division through October 31, 2008.
19. On November 17, 2008, Plaintiff was again admitted to Duke University Medical Center for fusion with hardware placement and bone grafting, performed by Dr. Isaacs. Plaintiff also underwent an additional out-patient surgical procedure, application of vertebral defect prosthetic device, anterior thoracic discectomy with decompression, and anterior thoracic spine fusion on December 2, 2008.
20. According to Dr. Greene, discitis can be from a variety of causes, both infectious and non-infectious. If discitis is infectious it usually persists, particularly in adults. Dr. Greene testified that diabetes is also a risk factor for infectious processes. According to Dr. Greene discitis is used different ways by different people. In the orthopedic nomenclature, it would be called degeneration of the disc. Dr. Greene also testified that osteomyelitis is infection of the bone, for which the goal of treatment is to eradicate it. If left untreated, it can go away on its own.
21. Dr. Greene opined that treatment of MRSA does not always result in the MRSA being gone forever. Dr. Greene testified that the source of Plaintiff's bacteremia, or blood infection, was never determined from his hospital admission in January 2008. In February 2008, Dr. Greene noted that it was thought that Plaintiff's bacteremia was more likely coming from a head lesion. MRSA is on our skin, so it can get in the bloodstream just from a nick in the skin.
22. According to Dr. Greene's testimony, Plaintiff had to take insulin shots for his diabetic condition and that bacteremia can be caused by using unclean needles.
23. Dr. Greene also testified that there is no way to know for sure the cause of Plaintiff's bacteremia. Based upon experimental studies on animals, in a bone that is *Page 8 
traumatized, the bacteria in the bloodstream are more likely to get a foothold than if the bone is not. Therefore, if Plaintiff's fall had caused a sprain or injury to his back and he subsequently developed bacteremia, it is more likely to get a foothold and cause infection in the bone than if Plaintiff did not have a preexisting trauma. Based upon Dr. Greene's testimony, if a patient gets an infection in the disc it comes from the bone first and then goes to the disc.
24. Dr. Isaacs testified that the blood culture from February 2008 which tested positive is a reflection of Plaintiff's discitis in his lumbar spine. In Dr. Isaacs' opinion, it is more likely than not that Plaintiff's MRSA bacteremia and cervical thoracic MRSA infection resulted from a flare-up of lumbar MRSA osteo that may have been latent until Plaintiff's January 2008 accident. However, Dr. Isaacs had never seen a seven year latency period. Dr. Isaacs testimony was based on the fact of a temporal relationship in that Plaintiff had no back pain prior to the fall and a few days after his accident, Plaintiff was experiencing back pain which by January 28, 2008 had developed into discitis.
25. Dr. Isaacs testified that Plaintiff's axial load injury caused the calcaneal fracture, which can cause a mid-lumbar spine fracture and probably a bleed into that area, although that fact is not known. Dr. Isaacs admitted that something caused the MRSA bacteremia in Plaintiff's spine, but he did not know the cause. Although Dr. Issacs indicated that he could come up with scenarios which led back to the fall as the instigator, Dr. Isaacs opined that no matter what, we are not going to know exactly what caused the bacteremia. Dr. Issacs further admitted that he could not explain how a fall from a six-foot retaining wall could cause someone to contract MRSA.
26. When questioned about his opinion, Dr. Isaacs testified that the "time frame makes a ton of sense in this case" and that the time course would ultimately lead one to the *Page 9 
conclusion that it came essentially back at the time of his fall. Dr. Isaacs also agreed that his opinion was based upon speculation. Dr. Isaacs further testified that he did not know for sure the cause of Plaintiff's discitis and that he was trying to come up with a conclusion as to what happened to Plaintiff.
27. Becky Miller, an infectious disease fellow at Duke University Medical Center, was requested as a consult for Plaintiff's bacteremia in August 2008 when Plaintiff began treating at Duke. Ms. Miller testified that it was possible that given the fact that he had previously had an infection in a location, it could have been stirred up by Plaintiff's fall. Ms. Miller also opined that individuals with degenerative joint disease sometimes are more likely to get infections as a result of the degeneration. While Ms. Miller was able to describe three possibilities, she was not able to explain the cause of Plaintiff's MRSA bacteremia. Ms. Miller acknowledged that Plaintiff fell and then two weeks later was complaining of back pain. However, she could not say whether the fall caused Plaintiff's infection.
28. Ms. Miller also testified that it was possible that the cut on Plaintiff's head in 2007 could have been the entry portal for Plaintiff's MRSA or that Plaintiff could have been colonized with MRSA which entered the body through a portal. However, there was no way to know whether Plaintiff was colonized before his January 2008 injury. Ultimately, Ms. Miller was only able to testify that Plaintiff had MRSA bacteremia shortly after his accident.
29. Plaintiff's nurse case manager, Tonya Hodges, testified that the open wound on Plaintiff's head had been present and unhealed for approximately one year according to Plaintiff.
30. Based upon the greater weight of the evidence, Plaintiff has failed to prove that the MRSA bacterimia or discitis suffered by Plaintiff was caused by the fall on January 10, 2008. *Page 10 
31. As Plaintiff worked for Defendant for a period of less than 52 weeks prior to his injury, the Full Commission finds that the third method of determining Plaintiff's average weekly wage under N.C. Gen. Stat. § 97-2(5) is the most fair and just. Under the third method, the average weekly wage is determined by dividing the earnings during the period of employment prior to the injury by the number of weeks and parts thereof during which the employee earned wages. Based on the Form 22 in evidence, prior to Plaintiff's injury, Plaintiff worked 22.43 weeks during which time he earned $10,423.82 in wages. Under method three this results in an average weekly wage of $464.73 resulting in a weekly compensation rate of $309.84.
32. The greater weight of the evidence shows that Plaintiff was temporarily totally disabled, and unable to earn wages in the same or other employment from January 10, 2008 through July 20, 2008 as a result of his compensable January 10, 2008 work injury.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment.Henry v. Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950).
2. Plaintiff suffered a specific traumatic incident injuring his left heel while performing duties in the scope and course of his employment with Defendant-Employer on *Page 11 
January 10, 2008. N.C. Gen. Stat. § 97-2(6). However, Plaintiff has failed to carry the burden of proving by competent evidence that a causal relationship existed between the January 10, 2008 work-related accident and his MRSA bacteremia or discitis. Click v. Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980).
3. A plaintiff in a workers' compensation case has the burden of initially proving "each and every element of compensability," including a causal relationship between the injury and the employment. Whitfield v. Lab. Corp. of Amer.,158 N.C. App. 341, 350, 581 S.E.2d 778, 784 (2003). "The quantum and quality of the evidence required to establish prima facie the causal relationship will of course vary with the complexity of the injury itself." Hodgin v. Hodgin,159 N.C. App. 635, 639, 583 S.E.2d 362, 365 (2003). A plaintiff must prove causation by the "greater weight" of the evidence.Phillips v. U.S. Air, Inc.,120 N.C. App. 538, 541, 463 S.E.2d 259, 261 (1995). In cases involving complicated medical questions, only an expert can give competent opinion testimony as to the issue of causation.Click v. Pilot Freight Carriers,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Where medical opinion testimony is required, "medical certainty is not required, [but] an expert's `speculation' is insufficient to establish causation."Holley v. ACTS, Inc.,357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). Furthermore, the causal relationship must be established by evidence "such as to take the case out of the realm of conjecture and remote possibility."Holley, 357 N.C. at 232, 581 S.E.2d at 753. In the instant case, plaintiff has presented insufficient evidence that his fall on January 10, 2008 resulted in his MRSA bacteremia or discitis. Therefore, Plaintiff is not entitled to indemnity or medical compensation for any disability or medical treatment resulting from the MRSA or discitis.
4. As Plaintiff worked for Defendant for a period of less than 52 weeks prior to his *Page 12 
injury, the Full Commission finds that the third method of determining Plaintiff's average weekly wage under N.C. Gen. Stat. § 97-2(5) is the most fair and just. Under the third method, the average weekly wage is determined by dividing the earnings during the period of employment prior to the injury by the number of weeks and parts thereof during which the employee earned wages. Based on the Form 22 in evidence, prior to Plaintiff's injury, Plaintiff worked 22.43 weeks during which time he earned $10,423.82 in wages. Under method three this results in an average weekly wage of $464.73 resulting in a weekly compensation rate of $309.84.
5. As a result of the injury to his heel, Plaintiff was temporarily totally disabled, and unable to earn wages in the same or other employment from January 10, 2008 through July 20, 2008 at the rate of $309.84 per week. N.C. Gen. Stat. § 97-29. Accordingly, Defendant's Form 24 Application to Terminate Plaintiff's compensation should be approved beginning July 21, 2008.
6. Plaintiff is also entitled to payment from Defendant for his permanent partial disability rating of twenty percent (20%) to his foot. N.C. Gen. Stat. § 97-31(14). Therefore, Plaintiff is entitled to compensation at the rate of $309.84 per week for 28.8 weeks resulting in a total of $8,923.39. Id.
7. Defendant is entitled to a credit for benefits paid after July 20, 2008 against any permanent partial disability benefits owed Plaintiff. N.C. Gen. Stat. § 97-31; Collins v.Speedway Motor Sports Corp.,165 N.C. App. 113, 598 S.E.2d 185 (2004)
8. Plaintiff is entitled to have Defendant pay for all medical treatment for his heel resulting from the January 10, 2008 compensable work injury which is reasonably necessary to provide relief or effect a cure. N.C. Gen. Stat. § 97-25. *Page 13 
9. Plaintiff's attorney is entitled to a reasonable attorney's fee of twenty-five percent (25%) of the compensation due Employee-Plaintiff in Paragraphs 5 and 6 of these Conclusions of Law.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability benefits to Plaintiff from January 10, 2008 through July 20, 2008 at the rate of $309.84 per week.
2. Defendant's Form 24 Application is granted beginning July 21, 2008.
3. Defendant shall pay to Plaintiff permanent partial disability of twenty percent (20%) to his foot for 28.8 weeks resulting at the rate of $309.84 per week resulting in a total of $8,923.39.Id.
4. Defendant shall receive a credit for benefits paid after July 20, 2008 against any
permanent partial disability benefits owed Plaintiff.
5. Defendant shall pay for all medical treatment for Plaintiff's heel resulting from the January 10, 2008 compensable work injury which is reasonably necessary to provide relief or effect a cure. N.C. Gen. Stat. § 97-25.
6. Defendant shall pay to Plaintiff's attorney a reasonable attorney's fee of twenty-five percent (25%) of the compensation due Plaintiff to be deducted from the amounts owed Plaintiff.
7. Defendant shall pay the costs
This is the 18th day of November 2010. *Page 14 
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ LINDA CHEATHAM COMMISSIONER
 *Page 1