***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with minor modifications, the Opinion and Award of Deputy Commissioner Gillen.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. Plaintiff is Tony Weavil.
2. Defendant-employer is Summer Industries, LLC.
3. Defendant-carrier is Accident Fund Insurance Company.
4. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act.
5. An employment relationship existed between defendant-employer and plaintiff on or about August 8, 2008, the date of the alleged injury by accident or specific traumatic incident.
6. All parties are properly before the North Carolina Industrial Commission and there are no issues as to misjoinder or nonjoinder.
7. Plaintiff's average weekly wage is $606.41 with a compensation rate of $404.48.
8. Plaintiff's date of birth is December 7, 1987.
 ***********
The following were entered into evidence as:
 STIPULATED EXHIBITS
a. The Pretrial Agreement, marked as stipulated exhibit 1.
b. A large collection of documents, including plaintiff's medical records, Industrial Commission forms, and discovery responses, collectively marked as stipulated exhibit 2.
c. A photograph of a machine used at defendant-employer's workplace, marked as stipulated exhibit 3.
d. A close-up photograph of a machine used at defendant-employer's workplace, marked as stipulated exhibit 4. *Page 3 
 *********** ISSUE PRESENTED
Whether plaintiff suffered a compensable injury by accident or specific traumatic incident on or about August 8, 2008, and, if so, to what medical treatment and/or Workers' Compensation benefits is plaintiff entitled, if any?
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer as a machine operator. Plaintiff's job duties included operating a crimper machine.
2. Plaintiff testified that, on or about August 8, 2008, he noticed the crimper machine malfunctioning. Plaintiff testified that he notified defendant-employer's second shift plant supervisor, Brad McCrary, about the problem via mobile phone. Mr. McCrary's job involved walking laps around defendant-employer's workplace, making sure that everything was running smoothly.
3. Plaintiff further testified that, on or about August 8, 2008, he climbed on top of the crimper machine, made the necessary repair, and then jumped off the crimper machine, at which point he felt a "pop" and a "sharp pain" in his back when he landed on his feet on the floor. Plaintiff testified that he notified Mr. McCrary that he sustained a back injury following the jump, and that Mr. McCrary helped plaintiff to the break room to rest.
4. Plaintiff eventually returned to his machine and completed the remainder of his shift. *Page 4 
5. While walking around defendant-employer's facility and observing defendant-employer's operations on or about August 8, 2008, Mr. McCrary noticed plaintiff shaking and jerking. Mr. McCrary attended to plaintiff, and plaintiff reassured Mr. McCrary that he experienced these episodes regularly. Plaintiff did not mention any jumping injury or any work-related injury at that time.
6. Mr. McCrary testified that he had no knowledge or record of any problem with a crimping machine occurring on August 8, 2008. Mr. McCrary also testified that he would have known about any problem with the crimping machine had there been one that night, that a maintenance man or lead man would normally perform any repairs needed, rather than plaintiff, that climbing onto the crimping machine to make a repair would be unnecessary and impractical, and that, had plaintiff reported any injury, Mr. McCrary would have taken plaintiff to Primecare for medical attention.
7. Plaintiff is approximately 5 feet 11 inches tall. The top of the crimping machine is approximately 4 feet off the ground.
8. Defendant-employer's Director of Operations, Kevin Frost, heard that plaintiff had "another one" of his "episodes" on or about August 8, 2008. When Mr. Frost asked plaintiff about the incident, plaintiff informed him that he had a condition in his back which plaintiff described as a bundle of nerves which was an unfortunate situation that he had been having to deal with. Plaintiff did not report a work-related accident to Mr. Frost, and accordingly, Mr. Frost did not complete any paperwork or otherwise document the incident as such documentation, according to Mr. Frost, is only necessary in the case of a work-related accident. Mr. Frost first heard about plaintiff's claim of a work injury in October 2008. *Page 5 
9. Christopher Fine, plaintiff's friend and former coworker, testified by deposition subsequent to the hearing before the Deputy Commissioner. The January 15, 2010 deposition was the first time Mr. Fine came forward to corroborate plaintiff's account of the August 8, 2008 incident. Mr. Fine testified that he witnessed plaintiff's accident while he was taking a smoke break at work. However, according to the health insurance papers which he signed for defendant-employer, Mr. Fine is not a smoker. Mr. Fine did not report any work injury sustained by plaintiff to Mr. Frost. Mr. Fine normally worked on line five, which has an obstructed view of plaintiff's work area, and the smoke break area at defendant-employer's facility would afford an unobstructed view of plaintiff's work area. Mr. Frost further testified that, as far as he knew, Mr. Fine was not a smoker. Mr. Fine was fired in May 2009 for failing a drug test. Prior to failing the drug test, Mr. Fine made comments around the plant to the effect that he had figured out a fail-safe way to pass any drug test.
10. Plaintiff has a medical history which includes back spasm problems since at least 2005. A medical note from Thomasville Medical Center dated December 13, 2005 indicates the following diagnoses: "1. Mild degenerative disc disease L4-5 with annular bulge asymmetrically more prominent along the left lateral aspect produces mild left foraminal stenosis, and 2. Mild bilateral facet arthrosis L5-S1."
11. Dr. Marc Fedder saw plaintiff several times in 2006. An August 31, 2006 medical record from Dr. Fedder reads in part, "[Plaintiff] lifts a lot of heavy material at work. Has lumbosacral pain. His pain sometimes radiates down his legs. He gives a history of tonic clonic contractions. May have underlying seizure disorder. Patient had previous evidence of atypical hemangioma L1-L2 and S1." Plaintiff also underwent an MRI in 2006. *Page 6 
12. In an October 2, 2006 medical note, Dr. J. Keith Miller relates that plaintiff had tenderness "in the lumbar paraspinals over the L5-S1 facets bilaterally as well as over the L4-5 facets bilaterally." The note of that date goes on to explain Dr. Miller's diagnoses: "This is a patient with lumbar facet syndrome. The shaking events seem to be more related to anxiety."
13. In addition to these preexisting back issues, plaintiff also had other preexisting conditions including anxiety problems, shaking episodes, and diarrhea. Furthermore, the medical records reflect that plaintiff was seen at the Wake Forest University Epilepsy Center in 2006, and that plaintiff's mother suspected that plaintiff had spinabifida.
14. In 2006, plaintiff worked as a cook at KFC. Plaintiff began working for defendant-employer in March 2007.
15. Plaintiff was written out of work for low back pain from April 24, 2008 through April 29, 2008 and from May 12, 2008 through May 15, 2008.
16. Plaintiff was seen by Dr. Marc Fedder on August 8, 2008. The medical notes from that visit make no mention of any injury or pain whatsoever, and only document that plaintiff was seen for a blood pressure check because plaintiff had taken "one of his father's Keppra." Keppra is a medication used to reduce the frequency of epileptic seizures. The medical note explains that plaintiff's blood pressure was "within acceptable range."
17. Dr. Fedder saw plaintiff again on August 11, 2008. The medical record from that date does not reflect any work injury. On that date, plaintiff apparently reported "a multitude of complaints," including blurred vision, cold hands, cold feet, tonic clonic contractions, feeling weak, loss of appetite, nausea and diarrhea. The medical note also explains that, "[Plaintiff] is having tonic clonic contractions of his arms. He may have a Jacksonian seizure. He had one apparently in my office. He has a history of seizure disorder in the past." *Page 7 
18. Plaintiff underwent an MRI on August 14, 2008. The MRI showed a left-sided disc protrusion at L5-S1. The August 2008 MRI report reads, in part, "The only change from the prior study is a mild increase in the size of a disc protrusion at L5-S1." Plaintiff's reported symptoms of 2008 do not seem related to this protrusion as plaintiff was complaining of right-sided symptoms, such as the right leg numbness mentioned in Dr. Willis' October 23, 2008 note. Dr. Sunil Dogra's November 7, 2008 medical note also corroborates the right-sided nature of plaintiff's complaints: "[Plaintiff] feels that his legs are subjectively much weaker and they feel like they are collapsing and the right leg is much worse than the left."
19. Plaintiff returned to work with defendant-employer on September, 24 2008 as a "saw man." Plaintiff informed Kevin Frost that he could not perform the "saw man" job, and he did not return to work after September 29, 2008. Plaintiff was granted FMLA leave, which was exhausted on November 21, 2008, as plaintiff's initial qualifying FMLA event was his absence from work on April 28, 2008.
20. Plaintiff requested time off from work and participated in a drumming competition on or about September 30, 2008.
21. Plaintiff was eventually terminated by defendant-employer for failing to report to work. Plaintiff was told that he was welcome to reapply for a position with defendant-employer. Plaintiff has not looked for work since October 2008.
22. On October 23, 2008, plaintiff saw Dr. Leanne K. Willis at the Neuroscience Center, LLC, having been referred there by Dr. Fedder. Dr. Willis' note from that date is the first to reflect plaintiff's account of an incident occurring on August 8, 2008 in which plaintiff jumped down from a machine and felt "immediate pain" and a "severe spasm." Dr. Willis' note *Page 8 
also explains that plaintiff complained to her about Dr. Fedder, because apparently, Dr. Fedder did not provide plaintiff with the amount of pain medication plaintiff desired.
23. Dr. Willis' October 23, 2008 note also reads, in part: "Since he did not have any radicular symptoms in the left leg which is the side affected by the disc bulges I don't think any surgical intervention is going to be warranted. There is nothing on the MRI scan to explain his right thigh numbness and most of his complaints are related to low back pain which is probably the facet joint disease as diagnosed by Dr. Miller in 2006."
24. On November 7, 2008, plaintiff was seen by Dr. Sunil Dogra at Lexington Memorial. Regarding the mechanism of injury plaintiff related at that time, Dr. Dogra's November 7, 2008 note documents that, "[Plaintiff] says he was at his usual job working as an operator in a cardboard factory lifting cardboard tubes in 8/2008. He bent to lift a particularly heavy load and he felt something pop in his back, which led to back spasms." That medical note also relates Dr. Dogra's diagnoses: "1. A 20-year-old with mild degenerative disc disease confirmed on MRI done in 2006 and 2008. 2. Mechanical low back pain. 3. Lumbar facet syndrome. 4. Myofascial pain syndrome."
25. Dr. Fedder testified following the hearing before the Deputy Commissioner. During his deposition, Dr. Fedder related that, "[Plaintiff's] complaints were not consistent with the 14 August 2008 MRI." Dr. Fedder further testified that the conditions plaintiff was experiencing in August 2008 were similar to things he had experienced on an ongoing basis during the previous two years. Dr. Fedder opined that plaintiff was capable of some work as of October 2008.
26. Dr. J. Keith Miller also testified after the hearing before the Deputy Commissioner. Regarding plaintiff's shaking episodes, Dr. Miller stated, "[The EEG ordered by *Page 9 
Dr. Fedder] was done in response to Dr. Fedder being worried that [plaintiff] may be having possible seizures. I'm assuming at this point that it's in relation to these intermittent episodes of diffuse body shaking that he noted in 2006, that I felt were — were related to anxiety. And the EEG did not show any evidence of any abnormality whatsoever."
27. Dr. Leanne Kay Willis also testified subsequent to the hearing before the Deputy Commissioner. When asked about plaintiff's veracity during her deposition, Dr. Willis responded, "Well, [plaintiff] and his mother were acting very strange when they came into the clinic, and I had a strong suspicion that he was seeking pain medications and disability. I think that he was reporting what he felt he had to report, what he felt — what he felt would substantiate his claims."
28. Dr. Sunil Dogra also testified following the hearing before the Deputy Commissioner. Dr. Dogra testified that he had never heard of plaintiff's "jumping" account of the injury until he read Dr. Fedder's report in preparation for his deposition. During his deposition, Dr. Dogra further noted the inconsistencies surrounding plaintiff's case in that plaintiff complained of symptoms primarily on his right side, while the August 2008 MRI showed mild nerve compression on the left side. Dr. Dogra also testified that he diagnosed plaintiff with lumbar facet syndrome, and that this diagnosis was similar to Dr. Miller's diagnosis of lumbar facet syndrome made in October of 2006.
29. Plaintiff's testimony regarding the circumstances surrounding his alleged injury and related facts conflicts with other witnesses' testimony, as well as the medical and documentary evidence. *Page 10 
30. Christopher Fine's testimony regarding the circumstances surrounding plaintiff's alleged injury and related facts also conflicts with other witnesses' testimony, as well as the medical and documentary evidence.
31. Having considered the testimony of plaintiff, Christopher Fine, Kevin Frost, and Brad McCrary, taken together with the documentary and other evidence, the Full Commission gives greater weight to the testimony of Kevin Frost and Brad McCrary than that of plaintiff and Christopher Fine.
32. Given the conflicting factual evidence, taken together with the medical evidence and testimony, plaintiff has not proven by the greater weight of the credible evidence that he sustained a compensable injury by accident or specific traumatic incident of the work assigned on or about August 8, 2008.
33. Given plaintiff's significant medical history prior to August 2008, taken together with the conflicting factual evidence and the equivocal medical evidence and testimony, plaintiff has failed to prove by the greater weight of the evidence that he suffered any disability as defined by the Act as a result of any work-related incident on or about August 8, 2008.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements. Whitfield v. Lab Corp. of Amer.,158 N.C. App. 341, 350, 581 S.E.2d 778, 784 (2003); Harvey v.Raleigh Police Department, 96 N.C. App. 28, 384. S.E.2d 549, *Page 11 disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989); Gaddy v. Kern,17 N.C. App. 680, 683, 195 S.E.2d 141, 143, cert. denied283 N.C. 585, 197 S.E.2d 873 (1973). Because causation in this case involves "complicated medical questions far removed from the ordinary knowledge and experience of laymen," only an expert is qualified to provide competent opinion evidence on this issue.Peagler v. Tyson Foods, Inc.,138 N.C. App. 593, 532 S.E.2d 207 (2000) (quoting Click v. PilotFreight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980)).
2. In this case, plaintiff has failed to meet his burden of proving by the greater weight of the evidence that he sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on or about August 8, 2008. N.C. Gen. Stat. §§ 97-2(6), 97-2(9); Harvey v. Raleigh PoliceDepartment, 96 N.C. App. 28, 384. S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989); Gaddy v. Kern,17 N.C. App. 680, 195 S.E.2d 141, 143, cert denied283 N.C. 585, 197 S.E.2d 873 (1973).
3. Plaintiff has also failed to meet his burden of proving by the greater weight of the evidence that he sustained a compensable specific traumatic incident of the work assigned on or about August 8, 2008. N.C. Gen. Stat. §§ 97-2(6), 97-2(9);Harvey v. Raleigh Police Department, 96 N.C. App. 28, 384. S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989); Gaddy v. Kern,17 N.C. App. 680, 195 S.E.2d 141, 143, cert denied283 N.C. 585, 197 S.E.2d 873 (1973).
4. Medical testimony that relies on speculation and conjecture, or unproven facts, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of the injury. Young v.Hickory Bus. Furn., 353 N.C. 277, 538 S.E.2d 912 (2000);Seay v. Wal-Mart Stores, Inc.,180 N.C. App. 432, 637 SE2d 299 (2006). In this case, dubious or incomplete facts related by plaintiff to his doctors subsequent to August 8, 2008 colored their diagnoses and *Page 12 
testimony. Furthermore, to establish causation in cases such as this, the expert testimony must "meet the reasonable degree of medical certainty standard necessary to establish a causal link."Holly v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003).
5. Given plaintiff's significant medical history, which is positive for seizure-like episodes and low back pain since at least 2005, taken together with medical testimony based on dubious or incomplete facts related by plaintiff to his physicians, plaintiff has produced insufficient evidence to prove that his back problems are a direct and natural result of any incident that may have taken place on or about August 8, 2008, or that any incident that may have taken place on or about August 8, 2008 materially exacerbated or aggravated a preexisting condition. N.C. Gen. Stat. § 97-2(6); Holly v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000);Hodgin v. Hodgin, 159 N.C. App. 635, 583 S.E.2d 362 (2003);Peagler v. Tyson Foods, Inc.,138 N.C. App. 593, 532 S.E.2d 207 (2000).
6. Plaintiff also has the burden of proving disability, and plaintiff must prove both the existence and the extent of disability. Disability is defined by the Act as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment." N.C. Gen. Stat. § 97-2(9). In the instant case, plaintiff failed to meet his burden of proving the existence and extent of disability that resulted from a work-related injury. N.C. Gen. Stat. § 97-2(9); Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E. 2d 682 (1982); Hall v. Chevrolet Co.,263 N.C. 569, 575, 139 S.E. 2d 857, 861 (1965); Sims v.Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001).
7. In light of the foregoing, plaintiff's claim is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-1, et seq. *Page 13 
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim must be, and hereby is DENIED.
2. Hearing costs have already been assessed pursuant to North Carolina Workers' Compensation Rule 611(6).
This the 20th day of January, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE BALLANCE COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1